## JAYMES, In Re

Ohio Appeals, 2nd Dist, Clark Co

Decided Jan 14, 1935

Charles E. Ballard, Springfield, and Sully Jaymes, Springfield, for Guardian.

Cole, Bowman & Hodge, Springfield, for Wards.

## OPINION

By THE COURT

Ordinarily, the issues are determined through pleadings. In the instant case, there are no pleadings, but the issues are presented through the first and final account filled by the guardian, the exceptions thereto filed by the wards or their representatives, and original papers together with transcript of docket and journal entries.

· Under §11206 GC, the guardian was given the right of appeal. The pertinent portion of this section reads as follows:

"Appeal may be taken to the Common Pleas Court * * * from an order, decision or judgment of the Probate Court, in settling the account of * * * guardian."

This same section in the last paragraph provides as follows:

"The cause so appealed shall be tried, heard and decided in the Court of Common Pleas in the same manner as though the Court of Common Pleas had original jurisdiction thereof."

This means, of course, that the cause would be tried de novo upon the same issues as in the Probate Court, i.e., on the final account of the guardian and the exceptions thereto, on the part of the wards. Incident thereto is also presented the jurisdictional question of right to hear on exception of administrator of John W. Brown.

After the Common Pleas Court determined the case on appeal and its orders, finding and judgment were journalized, it was then the duty of the Clerk of the Court of Common Pleas to certify such judgment, etc., to the Probate Court, as directed by §11211 GC, which reads as follows:

"Sec 11211 GC. CERTIFYING DECISIONS OF COMMON PLEAS COURT TO PROBATE COURT, et. Upon the decision of a case, appealed to the Court of Common Pleas, the Clerk shall make out an authenticated transcript of the order, judgment and proceedings of such court therein, and file it with the Probate Judge, who shall record it, and the proceedings thereafter be the same as if such order, judgment, and proceedings had been had in the Probate Court."

If this section has not been complied with, it may be done later, supplemented by the judgment of this court under like certificate.

Complaint is made that the Court of Common Pleas entered a personal judgment against the guardian and the entry as found in the transcript of docket and journal entries in a measure supports this contention.

The Common Pleas Court did not have jurisdiction to enter personal judgment, but its province, like the Probate Court, was to settle the accounts, which, of course, included the right to determine the amount due to the wards. **Brown ex v Reed, 56 Oh St 264-272.** The judgment of the Court of Common Pleas when certified to the Probate Court and recorded becomes the judgment of the Probate Court.

The determination of the Probate Court on the settlement of an account has the same force and effect as a judgment.

Sec 10954 GC contains the following language:

"The settlement in the Probate Court of the accounts of a guardian is final between him and his ward unless an appeal be taken therefrom to the Common Pleas Court in the manner provided by law."

This is the controlling legislative enactment rather than §10506-40 GC as contained in the new Probate Code, the latter not going into effect until January 1, 1932.

In considering the legal questions involved we find essentially different legal problems relating to the two wards.

We first take up and determine the issues as presented in the guardian's first and final account and the exceptions thereto by the ward Charles Brown.

The guardian in his first and final account, after taking credit for $6.10 Probate fees on account and guardian's compensation of $26.04, charges himself with $201.00 for the ward Charles D. Brown, and presents his check therewith for the latter amount. Under the exceptions and judgment of the lower court, the question arises as to whether or not interest should be charged upon this amount and the guardian allowed compensation.

It is admitted by the guardian that none of the funds in his hands for either ward was at any time invested. The lower courts were in accord that the guardian should be charged interest and should not be allowed compensation. The will of exceptions discloses that the evidence went far beyond the proper issue on this item of $201.00 which the guardian charged himself with in his final account. In the absence of an amendment of the final account, the guardian could not, through evidence, challenge its correctness. The lower courts found against the guardian on his claim of payments and this would cure all error, whether or not they made their finding on the principle of law herein announced or by giving to the evidence such probative force as was thought proper.

No claim was made that any payment was ever made to this ward in person, but it was claimed that payments were made to John Tutt, an uncle by marriage of the ward, for board and lodging. There is an entire absence of any evidence that the ward Charles Brown ever lived with or received board and lodging from John Tutt. In fact, all evidence was to the contrary. It would therefore follow that even if this

was an issue in the case, that no allowance could be made to the guardian since any payment to John Tutt would be illegal and unwarranted. This court has recently made a similar ruling in a Montgomery County case, wherein we held that the question of good faith in a guardian would not avail, and the payment to an improper person would not absolve the guardian from liability to his ward.

The question of interest is controlled by statute and we refer to §10933, GC, the last paragraph of subdivision 7 which reads as follows:

"If the guardian fails to loan or invest money of his ward within such reasonable time, he must account on settlement for such money and interest thereon, calculated with annual rests."

We can not see that the question of charging interest admits of any doubt, since it is admitted by the guardian that he did not invest the funds. When he charges himself with $201.00 in his account, being one-half of the principal after deducting costs and compensation, the charge of interest follows as a matter of law.

On the question of guardian's compensation, we think the amount should be allowed.

It is true that the guardian may be denied compensation when he has been guilty of gross misconduct or mismanagement whereby losses are incurred, but where, as in the present case, the guardian is charged with the full amount coming into his hands and interest thereon at annual rests, we do not feel that compensation should be denied. See In Re Oliver, 9 N.P., N.S., 178, affd, by Circuit Court, unreported.

Sec 10953, GC, provides that guardian may receive such compensation for his services as the court deems reasonable. Under this section the Probate Court is invested with the sole power of allowing compensation, but like all other discretions exercised by courts or administrative officers, they are subject to review.

The claimed dereliction of the guardian upon which the refusal to allow compensation is based was his failure to file inventory and current accounts every two years from the date of his appointment, as is provided in §10933 GC, subdivisions 1 and 3. In subdivision 3 it is specifically provided that where the guardian fails to file an inventory and current accounts within thirty days after being notified so to do, no allowance shall be made for services unless the court enters upon its journal that such delay was necessary and reasonable. So far as the record discloses, no notice was given by the Probate Court to file inventory or current accounts. This in a measure will divide the responsibility for such failure and would remove the statutory authority for refusing to allow compensation.

The basis of charge by the guardian in his account is reasonable and we feel it should be allowed.

The entry of this court by way of interpretation of the judgment of the court below declares the same not to be a personal judgment, but merely a settlement of the guardian's account with the modification of the judgment of the court below as to guardian's compensation and finding by way of interpretation against personal judgment, the order of the Court of Common Pleas will be affirmed so far as it relates to the ward Charles Brown.

The costs of the hearing in the Probate Court on the exceptions of Charles Brown will be taxed equally against Sully Jaymes, individually, and the ward Charles Brown. The costs in the Common Pleas Court for the purpose of computation may be divided one-half on the Charles Brown hearing and one-half to the John Wesley Brown hearing. The one-half so charged to the Charles Brown hearing will be divided one-half against Sully Jaymes, individually, and one-half against the ward. The ward's portion of the costs may be taken out on distribution. Entry may be drawn accordingly.

Coming now to consider the question of the guardian as it applies to the ward John Wesley Brown, we find a more involved legal question.

In the transcript of the docket and journal entries we find that the Probate Court, in July 1931, settled the account just as filed by the guardian.

This order was in the same entry in which exceptions were sustained to the account as it related to the ward Charles Brown.

In December 1931, following the judgment settling the account as to the ward John Wesley Brown, the administrator of John Wesley filed exceptions to the account. Thereafter these exceptions were heard and sustained. In sustaining the exceptions the court disallowed all claimed credits and charged the guardian with total one-half of assets, plus interest. From this order the guardian prosecuted an appeal to the Com-

mon Pleas Court and therein the judgment of the Probate Court was modified by giving credit on two items totalling $125.00.

The guardian challenges the right of the Probate Court to permit the filing of the exceptions by the administrator of John Wesley Brown and opening up the account when the same had been judicially passed upon and settled some five months previous. The ward John Wesley Brown had died in the penitentiary in the summer of 1930, and consequently could not personally file exceptions to the final account filed in the spring of 1931. We assume that Lewis was appointed administrator some time after the filing of the account and probably after the passing therein by the Probate Court.

Under the direct language of §10954, GC, the opening up of the account and permitting the filing of exceptions were not authorized, unless the situation would bring this ward's estate within some of the saving provisions of this or other sections of the Code. This section provides in substance that the settlement in the Probate Court is final between the guardian and ward, unless an appeal be taken therefrom to the Common Pleas Court in the manner provided by law. Neither the ward nor his administrator took an appeal, so there can not be any claim of compliance with this provision. The latter portion of this same section provides that the account may be opened up and reviewed for fraud or manifest mistake by civil action in the Court of Common Pleas, and so forth, and, of course, this provision of the Code section was not invoked.

It may have been intended to follow the procedure prescribed under §10506-40 GC, as enacted in the new Probate Code. This section, subdivision B, provides that where an account is settled in the absence of a person adversely interested and without actual notice to him, it may be opened up on his filing exceptions to the account within eight months after such settlement. If this section can properly be invoked, it fully meets the situation of the instant case and would authorize the filing of the exceptions by the administrator of John Wesley Brown. However, we find on examination that the new Probate Code by its express terms did not become effective until the first day of January, 1932, and so would not apply. We refer to §10512-25, GC; also find in Ohio Laws 1931, Volume 114, page 476.

Similar provisions are contained in §§10834 and 10835 GC, but these sections refer to settlements by executors and administrators and not to guardians. The above §10834 GC, standing alone, is broad enough in its language to raise the query whether or not it might be given application to any fiduciary wherein the accounts would be required to be filed. We have examined the statute in an effort to ascertain if it may be given a construction to include the situation in the instant case. Taking up the history we find that the section is located in the General Code under the chapter on executors and administrators. Before the adoption of the Code, the number was §6187, Revised Statutes, and contained in the single section the provisions as afterwards split up and presented in §§10834 and 10835, GC.

Going back further into the history of the legislation, we refer to Ohio Laws of 1884, Volume 81, page 137, being House Bill No. 403, and therein eight separate sections were amended and one repealed and all referring to procedure of executors and administrators.

Tracing the legislation back to earlier dates, leaves the conclusion irresistable that this section was not intended to apply to accounts other than executors and administrators.

Secs 11032 and 11033 GC have been examined for the reason that their provisions are very similar to new §10506-40 GC and old §§10834 and 10835, GC, but the sections now under consideration only have application to accounts filed by trustees of nonresident idiot, imbecile or lunatic.

We have examined these statutes in an effort to give them broader application, but their location in the General Code together with the history of the legislation, convinces us that they only have limited application.

In our exhaustive search we find no saving provisions through which the account of the guardian could be opened up by exceptions filed after the account had been adjudicated and settled.

We find the writer of the text in **Ohio Jurisprudence,** under subject **"Guardian and Ward," Volume 20, §192,** has arrived at this same conclusion.

"The filing of exceptions to the guardian's account in the Probate Court for the purpose of having the account corrected, is

proper practice although no statute expressly gives the right."

It may be urged that even in the absence of statute that it should be determined that the Probate Court has inherent power to open up and permit filing of exceptions. It might be thought that not permitting the court in its discretion to open up would be a very harsh rule and encouraging misapplication of funds and fraud. It will be observed that there is a remedy provided as against fraud and mistake by bringing action direct in the Court of Common Pleas. §10954, GC.

This question has been before Ohio courts under varying facts on numerous occasions.

The case of **Errett v Howert, 78 Oh St, 109,** is illuminating. The syllabus reads as follows:

"Every settlement made in the Probate Court by a guardian is final between the guardian and ward, unless an appeal be taken therefrom to the Court of Common Pleas or the same shall be opened and reviewed for fraud or mistake by civil action in the Court of Common Pleas, commenced within two years after the ward shall arrive at full age."

A reading of the opinion, written by Judge Davis, will show conclusively from cases cited and other comments, that the Supreme Court is committed to the theory that the procedure relative to opening up accounts is controlled by statute.

The early case of **Woodmansie v Woodmansie, 32 Oh St, 18,** is somewhat similar in its facts to the instant case. The second syllabus is as follows:

"Under the provisions of said §31, every settlement so made by a guardian is final between the guardian and ward, unless an appeal is taken therefrom, or the settlement is opened, in accordance with the provisions of the section."

Without quoting from other reports we cite the following cases as bearing on this question:

Lindsay v Lindsay, 28 Oh St, 157;

Newton v Hammond, 38 Oh St, 430;

Braiden v Mercer, 44 Oh St, 338;

Miller v Yound, Admr., 18 C.C., 511;

Brown, Exr. v Reed, 56 Oh St, 264.

Under many of the earlier cases reference is made to the saving provisions of §31, wherein it is provided that action may be brought to open up and review in the Probate Court in which such settlement was made. An examination of this §31, as found in Swan and Critchfield's Statute, page 677, will disclose that this meant an original action in the Probate Court. After the amendment provision was made for the action to be brought in the Court of Common Pleas.

We are bound to the conclusion that the settlement of the guardian's account as to John Wesley Brown has all the solemnity of a judgment and could not be set aside or questioned, except under the methods prescribed by the Code. The solemnity of this judgment will be recognized when we find that the State Constitution provides that Probate Courts have jurisdiction in appointment of guardians and settlement of their accounts. **Article 4, §8 of the Ohio Constitution.**

We do not want to be understood as holding that a Probate Court does not have power to correct its judgments. It is a court of record and does have such power under certain situations. This power has its limitations, the same as apply to any other court of record. The usual procedure was not followed, and therefore the question is not presented in the instant case.

We are constrained to the conclusion that the administrator did not invoke the proper remedy; that the Probate Court having passed on and settled the guardian's account as to John Wesley Brown, had no right to permit the opening of the account, filing of exceptions and redetermine the question.

Under the state of the record, it is the judgment of this court that neither the Probate Court nor the Common Pleas Court had jurisdiction to hear and determine exceptions filed by the administrator. So far as the ward John Wesley Brown is concerned, the account was settled. As to this account, finding will be made in favor of the guardian, and all costs charged against such administrator, and one-half of the total costs in the Court of Common Pleas will be charged against the administrator. Exceptions will be allowed. Entry may be drawn accordingly.

HORNBECK, PJ, KUNKLE and BARNES, JJ, concur.