OPINION JUDGMENT ENTRY
{¶ 1} Appellant Barbara Humphrey appeals from the July 14, 2003, Judgment Entry of the Delaware County Court of Common Pleas, Juvenile Division, granting temporary custody of Doria Allen and Bryanna Jackson to appellees Edwin and Letitia Hogan.
STATEMENT OF THE FACTS AND CASE
 {¶ 2} Terra Price is the biological mother of Doria Allen (DOB 9/9/99) and Bryanna Jackson (DOB 5/15/01). In October of 2002, after Terra Price was arrested for trafficking in cocaine, the Delaware County Department of Job and Family Services filed a complaint of dependency pursuant to R.C. 2151.27. The complaint indicated that, at the time the complaint was filed, the two children were residing with appellant Barbara Humphrey, their great-aunt, that Terra Price was currently in the Delaware County Jail, and that Bryanna's father, Bryan Jackson, was in prison. The complaint further listed two men as possible fathers of Doria: Robert Humphrey and Leroy Mullins. Pursuant to an Ex Parte Judgment Entry filed on October 15, 2002, the two children were placed in the temporary custody/protective supervision of the Delaware County Department of Job and Family Services for placement with the nearest consenting competent relative.
 {¶ 3} A shelter care hearing was held on October 16, 2002. As memorialized in a Judgment Entry filed on October 28, 2002, the trial court granted the Delaware County Department of Job and Family Services temporary legal custody of the two children for relative placement with appellant. The trial court, in its entry, noted that appellant had "relative placement by consent of mother prior to the complaint." Following an adjudication hearing held on November 12, 2002, at which Terra Price admitted the complaint for dependency, the children were adjudicated dependent and the trial court proceeded to the dispositional hearing. Following such hearing, the trial court ordered, pursuant to R.C. 2151.353, that temporary custody of the children be awarded to the Delaware County Department of Job and Family Services with physical placement with appellant. The trial court, in its entry,[1]
ordered that appellant "shall be a party."
 {¶ 4} Following a hearing held on December 17, 2002, the Magistrate recommended that Doria and Bryanna be placed in the custody of Barbara Humphrey and that the Delaware County Department of Job and Family Services maintain protective supervision. A Judgment Entry granting custody to Barbara Humphrey was filed on December 30, 2002.
 {¶ 5} Thereafter, on April 4, 2003, the Delaware County Department of Job and Family Services filed a Motion for Temporary Custody of Bryanna and Doria pursuant to R.C. 2151.33
and 2151.353 "due to the alleged physical abuse of Bryanna Jackson." The Department, in its motion, noted that Bryanna had visible bruises all over her body that were in different stages of healing, that Bryanna was being treated at a local hospital for pneumonia and there were concerns that she may not have received the medical attention that she required, and that Willard Humphrey,[2] on April 2, 2003, had been charged with possession of drugs. The Department, in such motion, further stated that "it is suspected that both girls were subject to drug use in the home."
 {¶ 6} A hearing on the Motion for Temporary Custody was held on April 7, 2003. Pursuant to a Judgment Entry filed on April 28, 2003, the trial court ordered that Bryanna and Doria "be temporarily committed to the Delaware County of Jobs (sic) and Family Services." The trial court, in its entry, specifically found that the girls' "continued residence in or return to the home would be contrary to their best interest and welfare." The trial court, in its entry, further noted that Bryanna had tested positive for opiates when admitted to the hospital for treatment of bilateral pneumonia, that Leroy Mullins was Doria's father and that the two girls had been removed from appellant's home and placed in foster care.
 {¶ 7} A pretrial conference was held on May 8, 2003. At the pretrial conference, Edwin Hogan, Doria's paternal grandfather,[3] indicated that he was considering his home as a possible home for Doria. The trial court, in a May 13, 2003, Judgment Entry, ordered that temporary custody of Doria and Bryanna was to remain with the Delaware County Department of Job and Family Services. A hearing on placement of both girls was scheduled for June 27, 2003.
 {¶ 8} On June 24, 2003, Edwin Hogan and Letitia Hogan, Doria's step-grandmother, filed a motion seeking to be made parties to the action. The next day, the Hogans filed a motion seeking an order placing both Doria and Bryanna with them during the pendency of the action.[4] The Hogans, in their motion, stated, in part, as follows:
 {¶ 9} "Mr. and Mrs. Hogan have enjoyed one visit as respite for the foster parents with these children and after much deliberation have decided they would like to be the guardians pursuant the placement for Doria Elaine Allen and Bryanna Jackson. The Department of Job and Family Services has completed a home study, a social history form and a safety audit and has deemed the house appropriate for children of this age. Mr. and Mrs. Hogan are solid citizens, have the means, stability and responsibility to adequately supervise, care for and nurture these children and, as such, are requesting that the Court place both children with them."
 {¶ 10} The trial court scheduled a hearing on the Hogan's motion to be made parties for June 27, 2003, before the scheduled placement hearing on such date.
 {¶ 11} Prior to the commencement of the placement hearing on June 27, 2003, the trial court addressed the Hogan's motion to be joined as parties. Counsel for the Hogan's stated on the record as follows:
 {¶ 12} "Your Honor, Mr. and Mrs. Hogan have also requested placement or custody of these minor children with them. As such, it seemed incumbent upon me to file a motion to make them parties at the same time. They obviously would have all the benefits of getting the notice, notices and getting them available to the court for information and supervision, would also make them available to the court for orders, particularly visitation orders and any other of the (indiscernible) orders that go along with that, so that's the basis of our request." Transcript at 5-6. After appellant and Leroy Mullins objected to the Hogan's motion,[5] the trial court granted the same and the trial commenced.
 {¶ 13} At the hearing, Rose Lorin Powers, a social worker with the Delaware County Department of Job and Family Services, testified that she had Bryanna and Doria removed from appellant's home on April 3, 2003, since "Bryanna was so ill and had bruising." Transcript at 24. Bryanna was then taken to Grady Memorial Hospital where she was admitted for bilateral pneumonia. At the trial, photographs were admitted into evidence showing bruising to Bryanna's left upper thigh and right cheek and scratches on her left shoulder. According to Powers, Bryanna "appeared extremely tired, wobbly. When you put her down to walk, it is difficult for her to walk, difficult for her to respond. I was extremely concerned for her well-being, her health at that point." Transcript at 26. Powers testified that appellant denied having anything to do with the bruises and stated that Bryanna's bruise on her right cheek was from a sippy cup. Powers also testified that the individual who called her and told her about the possible problems with the girls alleged that the children were being sedated while at appellant's home.
 {¶ 14} Powers further testified that she conducted a home study of the Hogans and determined that they were "loving individuals" and that their home was appropriate. Transcript at 51. According to Powers, the Hogans were willing to have the children together and could provide "the best placement for the children." Transcript at 52.
 {¶ 15} Following the hearing, as memorialized in a Judgment Entry filed on July 14, 2003, the trial court ordered that the two children be placed in the temporary custody of the Hogans "with Protective Supervision by the Delaware County Department of Job and Family Services." The trial court, in its entry, stated, in relevant part, as follows:
 {¶ 16} "This Court believes present placement with a parent is obviously not in either child's best interest. The DCDJFS has made all reasonable efforts to accomplish parental placement. Placement previously with Ms. Humphrey was at the mother's request.
 {¶ 17} "It is presently in the children's best interest to stay together. A Home Study with satisfactory results was conducted at the Hogan's home and Ms. Humphrey has a pending Child Endangering charge in this Court . . . based upon all of the evidence presented, it is in the children's best interest to be placed in the Temporary Custody of Edwin B. Hogan and Letitia Hogan with Protective Supervision by the Delaware County Department of Job and Family Service."
 {¶ 18} The trial court further indicated that the "Motion to Join Edwin and Letitia Hogan as parties will be granted by separate Judgment Entry." Thereafter, pursuant to a Judgment Entry filed on July 16, 2003, the trial court granted such motion.
 {¶ 19} It is from the trial court's July 14, 2003, Judgment Entry that appellant now appeals, raising the following assignments of error:
 {¶ 20} "I. The trial court erred in granting hogan's motion to make them a party.
 {¶ 21} "II. The trial court erred in not using the proper criteria or making the appropriate findings in changing the custody of the children."
 I {¶ 22} Appellant, in her first assignment of error, argues that the trial court erred in granting the motion filed by Edwin and Letitia Hogan to be made parties to this action.
 {¶ 23} As is stated above, appellant, in the case sub judice, appealed from the July 14, 2003, Judgment Entry of the trial court. The trial court in such entry, specifically stated that the Hogan's motion "will be granted by separate Judgment Entry." Two days later, on July 16, 2003, a separate entry was filed granting the Hogan's motion. The Notice of Appeal was then filed on August 14, 2003.
 {¶ 24} App. R. 3(D) provides, in pertinent part, that "[t]he notice of appeal . . . shall designate the judgment, order or part thereof appealed from. . . ." We agree with the Eighth District Court of Appeals which has held that "App.R. 3 must be construed in light of the purpose of a notice of appeal, which is to notify appellees of the appeal and advise them of `just what appellants . . . [are] undertaking to appeal from.'" Parks v.Baltimore Ohio RR (1991), 77 Ohio App.3d 426, 428,602 N.E.2d 674, (citing Maritime Manufacturers, Inc. v. Hi-Skipper Marina
(1982), 70 Ohio St.2d 257, 258-259, 436 N.E.2d 1034). An appellate court need not review the merits of the judgment or order, unless it is designated or otherwise referenced in the notice of appeal. Id.; Schloss v. McGinness (1984),16 Ohio App.3d 96, 97-98, 474 N.E.2d 666.
 {¶ 25} Appellant never filed a Notice of Appeal from the July 16, 2003, Judgment Entry granting the Hogan's motion to be made parties or requested an amendment, pursuant to App.R. 3(F), of her previously filed Notice of Appeal. Appellant, in her August 14, 2003, Notice of Appeal, only appealed from the trial court's July 14, 2003, Judgment Entry.
 {¶ 26} Accordingly, this Court has no jurisdiction to review the trial court's judgment of July 16, 2003, granting the Hogan's motion to be joined as parties.
 {¶ 27} Appellant's first assignment of error is, therefore, not well-taken.
 II {¶ 28} Appellant, in her second assignment of error, contends that the trial court applied the wrong standard in changing temporary custody of Bryanna and Doria from Barbara Humphrey to the Hogans. Appellant specifically contends that "[i]n making a determination of custody the court must follow the criteria of ORC 3109.04." Appellant further maintains that the trial court erred in failing to make the appropriate findings required by R.C. 3109.04 in changing custody of the children.
 {¶ 29} As is stated above, appellant argues that the trial court failed to comply with the criteria set forth in R.C.3109.04 in changing custody of the children to the Hogans. We disagree.
 {¶ 30} In In re Bonfield, 97 Ohio St.3d 387,2002-Ohio-6660, 780 N.E.2d 241 the Ohio Supreme Court addressed the issue of whether a juvenile court had jurisdiction to determine whether a shared custody agreement between parties in a same-sex relationship was in the best interests of the children. In Bonfield, while the two appellants were in a same-sex relationship, one of the appellants adopted two children and gave birth to three others through artificial insemination. After determining that the other appellant was not a "parent" for purposes of R.C. 3109.04(A)(2) since she did not meet the definition of such term contained in R.C. 3111.01, the court next addressed whether the juvenile court had jurisdiction under R.C.2151.23(A)(2) to determine whether a shared custody agreement was in the best interest of the children. The Ohio Supreme Court held that the juvenile court had such jurisdiction.
 {¶ 31} Since the court, in Bonfield, held R.C. 3109.04 was not applicable when one of the parties was a non-parent, we find that such section also would not apply in the case sub judice since neither Humphrey nor either of the Hogans is a parent of Doria and/or Bryanna, as the term parent is defined in R.C.3111.01.
 {¶ 32} Rather, R.C. 2151.353 governs the disposition of abused, neglected, or dependent children in a case such as this. See In re Waiters/Coller Children, Stark App. No. 2001CA00194, 2001-Ohio-1967. Subsection (A) provides the following in pertinent part: `If a child is adjudicated an abused, neglected, or dependent child, the court may make any of the following orders of disposition:
 {¶ 33} `(1) Place the child in protective supervision;
 {¶ 34} `(2) Commit the child to the temporary custody of a public children services agency, a private child placing agency, either parent, a relative residing within or outside the state, or a probation officer for placement in a certified foster home or in any other home approved by the court;
 {¶ 35} "(3) Award legal custody of the child to either parent or to any other person who, prior to the dispositional hearing, files a motion requesting legal custody of the child;
 {¶ 36} "(4) Commit the child to the permanent custody of a public children services agency or private child placing agency * * *.
 {¶ 37} "(6) Order the removal from the child's home until further order of the court of the person who committed abuse as described in section 2151.031 of the Revised Code against the child, who caused or allowed the child to suffer neglect as described in section 2151.03 of the Revised Code, or who is the parent, guardian, or custodian of a child who is adjudicated a dependent child and order any person not to have contact with the child or the child's siblings."
 {¶ 38} R.C. 2151.353(E)(2) allows any party, other than the parents whose parental rights have been terminated, to move for an order modifying or terminating any dispositional order, including an award of temporary or permanent custody. Such statute provides:
 {¶ 39} "Any public children services agency, any private child placing agency, the department of job and family services, or any party, other than any parent whose parental rights with respect to the child have been terminated pursuant to an order issued under division (A)(4) of this section, by filing a motion with the court, may at any time request the court to modify or terminate any order of disposition issued pursuant to division (A) of this section or section 2151.414 [2151.41.4] or 2151.415
[2151.41.5] of the Revised Code. The court shall hold a hearingupon the motion as if the hearing were the original dispositionalhearing and shall give all parties to the action and the guardian ad litem notice of the hearing pursuant to the Juvenile Rules. If applicable, the court shall comply with section 2151.42
of the Revised Code." (Emphasis added.)
 {¶ 40} A juvenile court must consider the `best interests' of the child when it considers the statutorily permissible dispositional alternatives enumerated in R.C. 2151.353(A). Inthe matter of: Jacob, Nicholas, Neil, and Clair Barcelo (June 26, 1998) Geauga App. No 97-G-2095, unreported, citing In reCunningham (1979), 59 Ohio St.2d 100, 107. App.3d 466, 469,611 N.E.2d 403 . An abuse of discretion is more than merely an error of judgment; it connotes a decision that is unreasonable, arbitrary, or unconscionable. Berk v. Matthews (1990),53 Ohio St.3d 161, 169, 559 N.E.2d 1301.
 {¶ 41} In the case sub judice, the December 30, 2002, dispositional order awarded custody of the children to Barbara Humphrey. A motion was filed to modify such dispositional order by granting temporary custody to the Hogans. Testimony was adduced at the June 27, 2003 hearing that the two girls were removed from appellant's home due to a lack of medical attention, which resulted in Bryanna's hospitalization for bilateral pneumonia. While Bryanna was hospitalized, it was discovered that she had bruises all over her body and she tested positive for opiates. In addition, testimony was adduced that appellant had criminal charges pending against her for child endangering due to her failure to obtain medical treatment for Bryanna and that appellant's husband had charges filed against him for drug use.
 {¶ 42} Testimony was also adduced that the Hogans were willing to take both of the girls and that there was no other suitable relative placement available. At the time of the hearing, Terra Price, the mother, was incarcerated as was Bryanna's father. In turn, Doria's father did not attend the hearing. As is stated above, Powers testified that she conducted a home study of the Hogans and determined that they were "loving individuals" that could provide "the best placement for the children." Transcript at 51, 52. The Guardian ad Litem, among others, did not want the two girls separated. Both the Guardian ad Litem and the Delaware County Department of Job and Family Services recommended custody with the Hogans.
 {¶ 43} Based on the foregoing, we find that the trial court did not apply the wrong standard in changing temporary custody from Barbara Humphrey to the Hogans since the trial court applied a "best interest" standard. We further find that the trial court's decision that it would be in the girls' "best interest" to be placed in the temporary custody of the Hogans was not arbitrary, unconscionable or unreasonable based on the testimony presented at the June 27, 2003 hearing.
 {¶ 44} Appellant's second assignment of error is, therefore, overruled.
 {¶ 45} Accordingly, the judgment of the Delaware County Court of Common Pleas, Juvenile Division, granting temporary custody of Doria Allen and Bryanna Jackson to Edwin and Letitia Hogan is affirmed.
Edwards, J., Gwin, P.J. and Farmer, J. concur.
For the reasons stated in our accompanying Memorandum-Opinion on file, the judgment of the Delaware County Court of Common Pleas, Juvenile Division, is affirmed. Costs assessed to appellant.
[1] While the hearing was held on November 12, 2002, the entry was not filed until January 3, 2003. This is after the entry of December 30, 2002, mentioned in paragraph 4 above, which granted custody to Barbara Humphrey. We find that our disposition of this case would be the same regardless of whether Barbara Humphrey had placement or custody. Our discussion assumes she had custody.
[2] Willard Humphrey is appellant's husband
[3] Edwin Hogan is the father of Leroy Mullins.
[4] The Guardian ad Litem, among others, did not want the girls separated.
[5] The State, the Guardian ad Litem and Terra Price, the girls' mother, did not object to the Hogans being joined as a parties.