[Cite as *In re Guardianship of Vacca*, 2020-Ohio-1482.]

COURT OF APPEALS
FAIRFIELD COUNTY, OHIO
FIFTH APPELLATE DISTRICT

|  |  |
|---|---|
|  | JUDGES: |
| IN RE: | Hon. John W. Wise, P.J. |
|  | Hon. Patricia A. Delaney, J. |
| GUARDIANSHIP OF | Hon. Earle E. Wise, Jr., J. |
| PATRICIA P. VACCA | Case No. 19 CA 44 |
| WARD | O P I N I O N |

CHARACTER OF PROCEEDING:     Civil Appeal from the Probate Court, Case No.  20190035

JUDGMENT:     Affirmed

DATE OF JUDGMENT ENTRY:     April 10, 2020

APPEARANCES:

For Appellee            For Appellant

NO APPEARANCE       PATRICIA P. VACCA
                                 PRO SE
                                 9230 Saratoga Terrace
                                 Pickerington, Ohio  43147

*Wise, John, P. J.*

**{¶1}** Appellant Patricia P. Vacca appeals the July 25, 2019, decision by the Fairfield County Court of Common Pleas, Probate Division, authorizing the payment of guardian compensation.

**{¶2}** No Appellee's brief has been filed in this matter.

## STATEMENT OF THE FACTS AND CASE

**{¶3}** The relevant facts and procedural history are as follows:

**{¶4}** On April 4, 2019, an Application for the Appointment of Guardian of an Alleged Incompetent was filed with Fairfield County Court of Common Pleas, Probate Division. The Applicant was Megan Reigle, the daughter of Patricia Vacca, the alleged incompetent.

**{¶5}** In said Application, Ms. Reigle stated the reason the prospective ward was incompetent was due to substance abuse. The Ward's Supplemental Information Form stated the Ward was then located at Mt. Carmel East Hospital, that the Ward suffered from alcohol abuse, that she did not believe that the Ward was capable of living independently, and that she believed the Ward would be best served with home health services. In a separate form, Ms. Reigle stated that she believed the fact that she was a full-time nursing student at The Ohio State University would aid her in being the guardian for her mother. (See Applicant's Supplemental Information Form).

**{¶6}** Also filed with the Application, was a Statement of Expert Evaluation by Taraq Attumi, M.D., stating that the Ward had been his patient for 16 days, that she suffered from alcohol abuse, that she required prolonged hospitalization with suspected delirium, and that she was mentally impaired. Specifically, he stated that his examination

revealed impairment in the following areas: orientation, thought process, memory, concentration and comprehension, and judgment. He further described her impairments as "[p]atient with on and off altered mental status, likely related to alcohol abuse and prolonged hospitalization". Additionally, he stated that she was currently confused, with an altered mental state. It was his opinion that a guardianship should be established/continued.

{¶7}   On April 8, 2019, a Notice of Incomplete Filing was docketed by the Probate Court for the following reasons: the Ward's date of birth did not match on the proposed forms, bond was not addressed, the proposed Guardian's criminal background check waiver was not provided, a check for court costs was not provided, and the notice to the prospective ward with the correct address needed to be provided.

{¶8}   On April 10, 2019, the Application for Appointment of Guardian was refiled.

{¶9}   By Judgment Entry filed April 12, 2019, the trial court set a hearing on the Application for May 28, 2019, at 10:00 a.m. Notice to the Prospective Ward of the Application and Hearing was also filed on April 12, 2019.

{¶10}  On April 30, 2019, Megan Reigle filed a "Withdrawal of Application" stated that she was withdrawing her application to be appointed Guardian.

{¶11}  On May 6, 2019, the Probate Court filed an Entry stating that based on the Application for Guardianship and the Statement of Expert Evaluation submitted with the Application, the court was of the opinion that a Guardianship should be established. The court therein ordered that the hearing would go forward as scheduled, and that Ms. Reigle was ordered to attend, along with her attorney, and the Ward, if possible.

**{¶12}** On May 8, 2019, the Court Investigator's Report on Proposed Guardianship was filed stating that it was the investigator's opinion that the ward was not in need of guardianship, as her condition had improved since the time the guardianship application was filed. According to the investigator, her investigation revealed that Ms. Vacca had been in the hospital for approximately 2 ½ months. During that time she was in a coma for 15-16 days.

**{¶13}** On May 28, 2019, a hearing was held on the Application for Guardianship. Ms. Vacca, Ms. Reigle and Atty. Aranda were all in attendance. At the conclusion of said hearing, the magistrate found that Ms. Vacca still had serious medical issues as recently as the previous week. The magistrate stated that it was Ms. Reigle's preference that a third-party be appointed guardian. The magistrate appointed Atty. Angela Seimer to serve as Guardian of the Person and the Estate of Patricia Vacca. A review hearing was scheduled for August 29, 2019, at 3:00 p.m.

**{¶14}** On June 11, 2019, Ms. Vacca sent a letter to the Probate Court, via email through the Clerk of Court's office, requesting a dismissal of the guardianship claiming that it was her belief that the court made its decision based on outdated medical information.

**{¶15}** On June 12, 2019, Ms. Vacca sent another letter to the Probate Court, via Fax through the Clerk of Court's office, requesting a dismissal of the guardianship again asserting that it was her belief that the court made its decision based on outdated medical information. Ms. Vacca claimed that when the application was filed, Altercare services were in use/required but that such were no longer required.

**{¶16}** By Entry filed June 12, 2019, the trial court treated Ms. Vacca's Ex Parte communications as a Motion to Terminate Guardianship and denied same.

**{¶17}** On June 14, 2019, Ms. Vacca sent another letter to the Probate, via Fax through the Clerk of Court's office, again requesting dismissal of the guardianship and requesting that August 29, 2019, be moved to an earlier date.

**{¶18}** On June 17, 2019, the Guardian filed an Application for Authority to Expend Funds to pay for Ms. Vacca's groceries, weekend care provider, mortgage, utilities, insurance, car payment, credit cards, etc.

**{¶19}** On June 18, 2019, the Guardian filed another Application for Authority to Expend Funds for the purchase of a new stove for Ms. Vacca and for the payment of attorney fees for Atty. James Aranda related to the filing of the guardianship.

**{¶20}** On June 20, 2019, Ms. Vacca sent a letter to the Probate Court, via email through the Clerk of Court's office, again requesting a court-appointed attorney for Ms. Vacca, dismissal of the guardianship, and that the review hearing be moved to an earlier date.

**{¶21}** By Judgment Entry filed June 24, 2019, the probate court appointed Amanda Morris as attorney for Ms. Vacca in this matter and ordered Ms. Vacca to submit all requests and correspondence to Atty. Morris or the guardian, when appropriate.

**{¶22}** On July 2, 2019, the Guardian filed another Application for Authority to Expend Funds of $600 per month as an allowance to Ms. Vacca for groceries, personal items, medical co-pays and gasoline.

**{¶23}** On July 2, 2019, Ms. Vacca's attorney filed a Motion for a Second Independent Medical Evaluation.

**{¶24}** On July 2, 2019, the trial court signed an Order for a Second Independent Medical Evaluation with the costs for same to be paid from the court's Indigent Fund. The court also set a review hearing for July 30, 2019, at 8:15 a.m.

**{¶25}** On July 8, 2019, counsel for Ms. Vacca filed a Statement of Expert Evaluation, completed by Dr. William Vasilakis, Psy.D., a clinical psychologist. In his evaluation, Dr. Vasilakis found that the only impairment Ms. Vacca suffered from was mild dementia and some memory loss. He found that Ms. Vacca was capable of making decisions concerning medical treatments, living arrangements and diet with support. He likewise found that she was capable of managing her finances and property with support. It was his opinion that the guardianship should be denied/terminated.

**{¶26}** On July 24, 2019, the guardian filed an Application for Authority to Pay Guardian Compensation in the amount of $555.00 for services rendered during the period of May 28, 2019, to July 23, 2019. She attached an invoice to the application detailing her time.

**{¶27}** By Judgment Entry filed July 25, 2019, the trial court filed an Entry Authorizing Payment of Guardian Compensation in the amount of $555.00.

**{¶28}** On July 30, 2019, a review hearing was held. In attendance at the hearing were Ms. Vacca, Ms. Reigle, and the guardian, Ms. Seimer. Upon consideration of the Expert Evaluation of Dr. Vasilakis and agreement by the guardian, the court ordered the guardianship terminated effective that day. The court further authorized the payment of $532.50 for attorney fees payable to Atty. Morris from the court's Indigent Fund. *See* Entry/Magistrate's Order, July 30, 2019.

**{¶29}** On August 20, 2019, the trial court filed an Entry stating that it had addressed all outstanding issued raised by Ms. Vacca in her various correspondence sent through the Clerk's office, believed to be addressed to the court, in its July 30, 2019, Entry. The court stated that if the parties wished to have any other issues considered, they should file appropriate paperwork, serve all necessary parties, and comply with all aspects of the Probate Court Local Rules. The court took no further action.

**{¶30}** On August 23, 2019, Ms. Vacca sent a 4 page letter with 48 pages of attachments to the Probate Court via Fax through the Clerk of Court's office. On the Fax cover sheet, Ms. Vacca stated "[a]ttached are the documents regarding the objections to this case". (Fax received by Clerk on August 26, 2019).

**{¶31}** By Judgment Entry filed August 29, 2019, the trial court, upon consideration of the correspondence submitted by Ms. Vacca, denied the requested relief.

**{¶32}** On September 9, 2019, Ms. Vacca sent correspondence to the Probate Court, via Fax through the Clerk of Court's office, including a Notice of Appeal from the trial court's September 9, 2019, judgment. The Notice of Appeal stated that she was appealing to the Court of Appeals of Fairfield County, Ohio, Tenth Appellate District.

**{¶33}** On September 16, 2019, the probate court filed an Entry addressing Ms. Vacca's submitted correspondence addressed as a "Notice of Appeal", finding that it did not comply with necessary requirements for an appeal and noting the reference to the Tenth Appellate District. The court noted that Ms. Vacca had failed to comply with Local Rule 58.1(B), which requires the appropriate costs be paid in advance. The court advised Appellant that going forward it would not accept any filings without the payment of

appropriate costs. The court further cautioned Appellant that Local Rule 57.4(D) prohibited submission of documents for filing by email.

**{¶34}** On September 20, 2019, Ms. Vacca filed a Notice of Appeal with this Court from the order entered on September 9, 2019. Attached to the Notice were numerous entries and filings from the case, with the notable exception of any September 9, 2019, order or entry.

**{¶35}** On October 7, 2019, Ms. Vacca filed an Amended Notice of Appeal with this Court, which stated that she was appealing from the order entered on October 4, 2019.

**{¶36}** On October 7, 2019, Ms. Vacca filed a docketing statement with this Court which stated that she was appealing from a July 25th judgment. Under the issues for review, she stated "[c]ourt error in awarding guardianship." Attached to the docketing statement are numerous filings, entries, correspondence and email, amounting to the majority of the case file in this matter.

**{¶37}** Appellant now appeals, raising the following assignment of error for review:

**ASSIGNMENT OF ERROR**

**{¶38}** "I. THE FAIRFIELD COUNTY PROBATE COURT OF OHIO ABUSED ITS AUTHORITY BY ORDERING THE GUARDIANSHIP OF PATRICIA VACCA. THE COURT DID NOT REVIEW OR TAKE INTO CONSIDERATION ALL UPDATED MEDICAL EVALUATIONS NOR THE COURT INVESTIGATORS [SIC] EVALUATION. THEREFORE, THE APPELLANT – PRO SE, IS REQUESTING ALL COURT COSTS AND GUARDIAN FEES PAID FROM THE APPELLANTS [SIC] FINANCIAL FUNDS RELATING TO THIS CASE BE REFUNDED TO THE APPELLANT."

{¶39} Initially, we note App.R. 3**(D), provides:**

**Content of the Notice of Appeal**

The notice of appeal shall specify the party or parties taking the appeal; shall designate the judgment, order or part thereof appealed from; and shall name the court to which the appeal is taken. The title of the case shall be the same as in the trial court with the designation of the appellant added, as appropriate. Form 1 in the Appendix of Forms is a suggested form of a notice of appeal.

{¶40} This Court has previously held that "App.R. 3 must be construed in light of the purpose of a notice of appeal, which is to notify appellees of the appeal and advise them of 'just what appellants ... [are] undertaking to appeal from.' " *See In re Allen*, 5th Dist. Delaware No. 03CAF08041, 2004-Ohio-2911, ¶ 24; *Parks v. Baltimore & Ohio RR* (1991), 77 Ohio App.3d 426, 428, 602 N.E.2d 674, (citing *Maritime Manufacturers, Inc. v. Hi–Skipper Marina* (1982), 70 Ohio St.2d 257, 258–259, 436 N.E.2d 1034). An appellate court need not review the merits of the judgment or order, unless it is designated or otherwise referenced in the notice of appeal. *Id.; Schloss v. McGinness* (1984), 16 Ohio App.3d 96, 97–98, 474 N.E.2d 666.

{¶41} In the case *sub judice*, Appellant's amended notice of appeal only designates an appeal from an October 4, 2019, entry. However, it appears from appellant's docketing statement, brief and assignments of error that it is from the July 25, 2019, Judgment Entry that she sought to appeal. Therefore, we conclude that it is the July 25, 2019, Judgment Entry that is before us on appeal.

**I.**

{¶42} In her sole assignment of error, Appellant argues that the trial court abused its discretion in ordering a guardianship in this matter and that as a result, all costs and fees should be refunded. We disagree.

{¶43} The Probate Court is charged by law to appoint guardians for the person, or the estate, or both, of minors and incompetent persons. R.C. §2111.02(A). Under Ohio law, a guardian is entitled to compensation for their services. Compensation of guardians is set by local rule. Sup.Ct. R. 73.

{¶44} Superintendence Rule 73 sets forth how a trial court should compute allowable compensation for guardian fees, and provides as follows:

> **(A) Setting of Compensation.** Guardian's compensation shall be set by local rule.

> **(B) Itemization of Expenses.** A guardian shall itemize all expenses relative to the guardianship of the ward and shall not charge fees or costs in excess of those approved by the probate division of a court of common pleas.

> **(C)** ***

{¶45} Fairfield County Probate Court Local Rule 73 provides:

> Local Rule73.1 Determination of Compensation for Non-Indigent Cases

> This Rule governs the determination of the compensation to which a guardian is entitled.

A. Guardian of Person

A guardian of the person may charge a fee annually in an amount not exceeding $5,000.00 at a rate not in excess of $75.00 per hour, unless the Court authorizes a higher fee after proper application and a hearing. This fee must be supported by an itemized hourly statement showing the dates services were performed, a description of the services, the time expended, the hourly rate charged and the total charge for each separate entry.

B. Guardian of Estate

A guardian of the estate may charge a fee annually in an amount not exceeding the total of the following percentages:1.5% of all income, including without limitation earnings from intangible investments and money on deposit, Social Security, veterans' or other government benefits, and gross rentals from real estate managed by a person or entity other than the guardian; plus 2.3% of all annual expenses; plus 3.10% of gross rentals from real estate actually managed by the guardian without the assistance of another person or entity; plus 4.1% of the value of all tangible and intangible personal property remaining in the guardian's hands at the conclusion of the last accounting period, or as shown on the inventory if the guardian has not yet filed a first accounting.

C. Guardian of Person and Estate

A guardian of the person and estate may charge a fee annually in an amount not exceeding the total of the fees described in Rule 73.1(A) and 73.1(B).

D. Alternative Fee Computation

In the alternative to computing the guardian of the estate fee by percentages, a guardian may charge for his or her services on an hourly basis. Guardians may not charge a rate in excess of $75.00 per hour, unless the Court approves a higher rate in advance due to the guardian's special skills or training that are beneficial to the ward. All of the guardian's services must be itemized in a statement showing the dates services were performed, a description of the services, the time expended, the hourly rate charged and the total charge for each separate entry. If a guardian requests a fee that exceeds the amount allowed in Rule 73.1(A), (B) or (C), the application must be on an hourly basis. The itemized statement must cover all of the guardian's services for that period, not just those exceeding the allowable amount.

**{¶46}** The allowance of compensation to a guardian is a matter within the sound discretion of the Probate Court. *Marks v. Marks* (1937), 58 Ohio App. 266. However, the court's exercise of discretion is subject to appellate review. *In re Jaymes* (App. 1935), 18 Ohio Law Abs. 613. If an abuse of discretion is found to be present, the lower court's order will be reversed or modified on appeal. *See In re Estate of Stafford* (App. 1933), 14 Ohio Law Abs. 18. An abuse of discretion is more than an error of law or judgment; it implies an unreasonable, arbitrary, or unconscionable attitude on the part of the trial court. *Ojalvo v. Bd. of Trustees of Ohio State Univ.* (1984), 12 Ohio St. 3d 230; *Blakemore v. Blakemore* (1983), 5 Ohio St. 3d 217.

**{¶47}** This Court may not reverse a trial court's finding in this regard unless we find the court abused its discretion. Our review of the record leads us to conclude the trial court did not abuse its discretion in making these determinations. Here, the guardian, who

was both the guardian of the person and the estate in this matter, submitted a detailed invoice with dates, descriptions of the services performed, the time expended (7.4 hours) and the hourly rate charged ($75/hour), totaling $555.00 for services provided for the time period June 3, 2019 to July 19, 2019. We find no abuse of discretion on the part of the trial court in approving said fees, as they are in accordance with the local rule and appear to be an accurate representation of the services performed.

{¶48} With regard to Appellant's argument that such services should never have been needed because a guardianship should never have been created, we find same to be without merit. In matters relating to guardianships, the probate court is required to act in the best interest of the ward. *In re Guardianship of Clark*, 10th Dist. No. 09AP-96, 2009-Ohio-3486, ¶ 29; *In re Guardianship of Collins*, 12th Dist. Warren No. CA2013-08-072, 2014-Ohio-5750, ¶ 9; *In re Estate of Bednarczuk*, 80 Ohio App.3d 548, 551, 609 N.E.2d 1310 (12th Dist.1992). The ultimate determination of whether to impose a guardianship of the person is a matter left to the probate court's discretion. R.C. §2111.02(A); *In re Hackl*, 6th Dist. Wood No. WD-08-030, 2009-Ohio-666, ¶ 13; *In re Guardianship of Simmons*, 6th Dist. Wood No. WD-02-039, 2003-Ohio-5416, ¶ 38.

{¶49} Here, based on the Application filed with the court by Appellant's daughter and the Statement of Expert Evaluation by Taraq Attumi, M.D., detailing Appellant's impairments and the need for creation of a guardianship, we find no error in the probate court's determination that a guardianship was required and in the best interest of the ward.

**{¶50}** Appellant's sole assignment of error is overruled.

**{¶51}** Accordingly, the judgment of the Probate Court, Fairfield County, Ohio, is affirmed.

By: Wise, John, P. J.

Delaney, J., and

Wise, Earle, J., concur.

JWW/d 0408