OPINION *Page 2 
{¶ 1} Appellant, the Richland County Children Services Board, appeals the decision by the Richland County Juvenile Court denying a request for permanent custody and granting legal custody of Valick Conley to the maternal grandparents, Willa and Bennett Rader.
 STATEMENT OF FACTS AND CASE {¶ 2} Valick Conley's date of birth is September 1, 2003. Valick's biological parents are Elizabeth Rader aka Hodge and Steven Conley. Valick's maternal grandparents are Willa and Bennett Rader. Valick also has a half sister, Arabella Hodge whose date of birth is January 28, 2006. Arabella was placed in the custody of her father, David Hodge.[1] The facts which led to the Valick's involvement with children's services are as follows:
 {¶ 3} In January of 2005, Elizabeth Hodge and Steven Conley were living as a couple together with their two children Gage Conley and Valick Conley. Gage was approximately six months of age and Valick was approximately sixteen months of age.
 {¶ 4} On January 27, 2005, at around 9:00 P.M. the couple put the children to bed. They placed Valick in a crib and Gage on their adult bed. The mattress of the adult bed was close to a baseboard heater. After putting the children to bed, the couple smoked marijuana and watched movies. The parents fell asleep and woke up around 11:00 A.M. After awaking, the parents didn't hear any commotion in the bedroom, so they assumed the children were content. Elizabeth then went to the store to purchase formula for Gage. She returned home around 11:45 A.M. and both parents then went *Page 3 
into the bedroom to check on the children. They found Gage wedged between the mattress and the heater. They gathered Gage up, wrapped him in a blanket and called 911. Gage died as the result of the thermal injury. Valick was immediately removed from the parent's care and placed in the emergency custody of Richland County Children's Services (hereinafter "Children's Services" or the "agency"). On that date relatives could not be reached so Valick was placed in foster care.
 {¶ 5} On January 31, 2005, a complaint for dependency was filed for Valick and Children's Services sought temporary custody of the child.
 {¶ 6} On March 10, 2005, the trial court approved and adopted individual case plans for each of the parents. The case plans included the successful completion of parenting classes and the obtaining of employment, stable housing, a drug and alcohol assessment and mental health assessments. The parents were further granted supervised visitation. The case plan was subsequently modified to permit the maternal grandparents to have up to sixteen hours of visitation a week with their grandson in addition to any other visits agreed upon between the maternal grandparents and the foster parents.
 {¶ 7} On March 17, 2005, a hearing was held before the magistrate. During the hearing the parents stipulated to a dependency finding and Valick was placed in the temporary custody of the Children's Service Agency. The magistrate's decision was approved and adopted by the trial court on March 31, 2005.
 {¶ 8} On or about June 30, 2005, Valick was placed in the home of his maternal grandparents, Willa and Bennett Rader. *Page 4 
 {¶ 9} On August 3, 2005, Steven Conley was ordered to provide child support in the amount of $166.00 per month for Valick. On October 4, 2005, Elizabeth Conley was ordered to provide $166.00 per month in child support for Valick.
 {¶ 10} In December of 2005 Steven Conley was found guilty of involuntary manslaughter for the death of Gage Conley and was sentenced to a seven year term of imprisonment.
 {¶ 11} On December 22, 2005, Children's Services filed a motion for disposition requesting the continuation of temporary custody. In the motion, Children's Services indicated that Elizabeth had made substantial progress in complying with her case plan. Specifically, it was reported that Elizabeth completed her psychological evaluation at Family Life Counseling and that Elizabeth exercised visitation with Valick on a weekly basis. Further, the report stated that the mother and child share a noticeable bond which can be seen by the hugs given to each other, the interaction during playtime and the affection shared between the two of them.
 {¶ 12} On February 7, 2006, the trial court granted Elizabeth expanded supervised visitation to occur in the maternal grandparents' home. On February 23, 2006, by Magistrate's decision, the trial court found that Children's Services had failed to comply with the expanded visitation order and had further restricted visitation. Upon review, the magistrate found the maternal grandparents to be fully cooperative with the agency and the court. The magistrate further found that the grandparents were willing and able to protect Valick and competent to comply with court orders and agency requirements. Over the objection of Children's Services, the magistrate found that it was in the child's best interest to maintain a healthy bond with his mother and to spend as *Page 5 
much time with her as possible in a family setting. The magistrate further found that it was in Valick's best interest to remain in the care of his maternal grandparents unless and until reunification could occur.
 {¶ 13} On March 20, 2006, Elizabeth Rader (aka Hodge) was convicted of one count of involuntary manslaughter for the death of Gage Conley and was sentenced to serve a seven year term of imprisonment.
 {¶ 14} On March 22, 2006, the Richland County Children's Service Agency filed a motion for permanent custody of Valick Conley.
 {¶ 15} On May 12, 2006, after a hearing, and by judgment entry, the trial court added the maternal grandparents, Willa and Bennett Rader, as parties to the permanent custody action. On June 21, 2006, the Rader's filed a notice of appearance. Additionally, on June 21, 2006, Willa and Bennett Rader filed a "Proposed Motion to Modify Disposition." In the motion the Rader's requested the trial court to grant them legal custody of their grandson.
 {¶ 16} On September 22, 2006, the parties executed and filed a written stipulation that the child cannot be placed with either parent within a reasonable period of time and should not be placed with either parent pursuant to R.C. 2151.414(E)(5) and 2151.414(E)(12). The stipulation was accepted and adopted by the magistrate.
 {¶ 17} On September 12, 2006, the final guardian ad litem's report was filed. In the report, the guardian recommended that Willa and Bennett Rader be granted legal custody of Valick with ongoing protective supervision by Children's Services.
 {¶ 18} On October 6, 2006, the magistrate held a hearing on Children Services' motion for permanent custody and the maternal grandparents' motion for legal custody. *Page 6 
Several witnesses testified including the Children Services' investigator, Mark Keck, social worker, Patrick Ludwick, maternal grandmother, Willa Rader, and the guardian ad litem, Cathy Evans.
 {¶ 19} On February 7, 2007, the magistrate issued a decision. In the decision the magistrate stated that all the parties, including the caseworker, agree that Valick should remain with Willa and Bennett Rader. The magistrate also stated that the agency cannot guarantee that if permanent custody were granted the Raders would be permitted to adopt the child. In fact the magistrate stated that the guardian and parents are not confident that adoption by the Raders is the permanency choice of the agency if permanent custody is granted. Ultimately the magistrate found that Children's Services had failed to prove by clear and convincing evidence that the parents had continuously and repeatedly failed to remedy the problems that initially caused the child to be placed outside the home; that although the parents have been convicted of involuntary manslaughter against a sibling there was no evidence presented that the parents present an ongoing threat to Valick; and, that the termination of parental rights was not in the child's best interest. Finally, the magistrate held that it is in the child's best interest to remain in the Rader's home and continue a relationship with his mother. The magistrate further held that the child's need for a legally secure placement could be adequately met through legal custody with Willa and Bennett Rader.
 {¶ 20} On February 16, 2007, Children's Services filed an objection to the magistrate's decision and a motion to set aside the magistrate's decision. On February 28, 2007, an attorney on behalf of Valick Conley, filed a memorandum in opposition to the objection and motion to set aside. *Page 7 
 {¶ 21} On July 24, 2007, the trial court by judgment entry found that there was no error of law or other defect in the magistrate's decision. The trial court further held that the agency has the burden to prove by clear and convincing evidence that the termination of parental rights and a grant of permanent custody is in the best interest of the child. The trial court held that the agency did not establish that permanent custody was in the child's best interest. To the contrary, the trial court held that the record supports the magistrate's decision that the disposition of legal custody to the maternal grandparents, Willa and Bennett Rader, is in the child's best interest. Accordingly, the trial court overruled the objection and approved and adopted the magistrate's decision.
 {¶ 22} It is from this judgment entry approving and adopting the magistrate's decision, that the Richland County Children Services Agency now seeks to appeal, setting forth the following assignment of error:
 {¶ 23} "THE TRIAL COURT'S DECISION DENYING THE RCCSB'S MOTION FOR PERMANENT CUSTODY WAS NOT IN THE BEST INTEREST OF THE MINOR CHILD AND IS CONTRARY TO THE MANIFEST WEIGHT OF THE EVIDENCE."
 {¶ 24} Appellant claims in the sole assignment of error that the trial court's decision denying Richland County Children's Services motion for permanent custody and granting legal custody of the minor child to the maternal grandparents is against the manifest weight of the evidence. Essentially appellant argues that the trial court only considered the availability of a relative placement with the maternal grandparents, rather than the best interest factors set forth in R.C.2151.414(D). The appellant further argues that it is inconceivable that the trial court would permit placement with grandparents who are respectively 57 and 60 years of age and further refuse to *Page 8 
terminate the custodial rights of a drug abusive biological mother who is imprisoned for the death of the child's sibling.
 {¶ 25} The relationship between a parent and a child is a "fundamental liberty interest." Santosky v. Kramer (1982), 455 U.S. 745, 753,71 L.Ed.2d 599, 102 S.Ct. 1388. In Troxel v. Granville (2000), 530 U.S. 57,120 S.Ct. 2054, 147 L.Ed.2d 49, the United States Supreme Court stated that "parents' interest in the care, custody and control of their children is perhaps the oldest of the fundamental liberty interests recognized by the Court." The Ohio Supreme Court has also long held that permanent termination of parental rights is "the family law equivalent of the death penalty in a criminal case and that, accordingly, termination of parental rights and permanent custody to a public agency should be an alternative of `last resort.'" In re Cunningham (1979),59 Ohio St. 2d 100, 391 N.E.2d 1034.
 {¶ 26} In this case, appellant claims that the trial court's decision is against the manifest weight of the evidence. In applying the manifest weight standard of review, our role is to determine whether there is relevant, competent and credible evidence upon which a fact finder could base its judgment. Cross Truck v. Jeffries (Feb. 10, 1982), Stark App. No. CA-5758, unreported. Judgments supported by some competent, credible evidence going to all the essential elements of the case will not be reversed as being against the manifest weight of the evidence. CE.Morris Co. v. Foley Constr. (1978), 54 Ohio St.2d 279, 281,376 N.E.2d 578. It is based upon this standard that we review appellant's assignment of error.
 {¶ 27} Pursuant to Revised Code Section 2151.414, a juvenile court may grant permanent custody of a child to the movant if the movant proves by clear and *Page 9 
convincing evidence that, (1) either the child is abandoned, orphaned or has been in the temporary custody of the agency at least 12 months of a consecutive 22 month period; or the child cannot be placed with either parent within a reasonable period of time and should not be placed with either parent; and, (2) that the grant of permanent custody of the child to the agency is in the child's best interest. R.C. 2151.414(E)(5),2151.414(E)(12) and 2151.414(D); In re William S. (1996),75 Ohio St. 3d 95, 99, 1996-Ohio-182, 661 N.E. 2d 738.
 {¶ 28} Pursuant to Ohio Revised Code Section 2151.414(D), in determining the best interest of a child, the juvenile court must consider all relevant factors including but not limited to the following: (1) The interaction and interrelationship of the child with the child's parents, siblings, relatives, foster parents and out-of-home providers, and any other person who may significantly affect the child; (2) The wishes of the child, as expressed directly by the child or through the child's guardian ad litem, with due regard for the maturity of the child; (3) The custodial history of the child, including whether the child has been in the temporary custody of one or more public children services agencies or private child placing agencies for twelve or more months of a consecutive twenty-two month period ending on or after March 18, 1999; (4) The child's need for a legally secure permanent placement and whether that type of placement can be achieved without a grant of permanent custody to the agency; (5) Whether any of the factors in division (E)(7) to (11) of this section apply in relation to the parents and child.
 {¶ 29} "Although the trial court is not precluded from considering other relevant factors, the statute explicitly requires the court to consider the enumerated factors." See In re Smith, 9th
Dist. No. 20711, 2002-Ohio-34. *Page 10 
 {¶ 30} In this case, at the time of the permanent custody hearing, the parents were incarcerated for involuntary manslaughter and were serving prison terms. Prior to the hearing, the parents executed a written stipulation that the child could not be placed with either parent within a reasonable period of time and/or should not be placed with either parent. As a result, the remainder of the proceedings focused on the child's best interest.
 {¶ 31} During the permanent custody hearing the magistrate heard the testimony of Mark Keck an investigator for Children Services, Patrick Ludwig, a social worker for children's services, Willa Rader, the child's maternal grandmother, and Cathy Evans the court appointed guardian ad litem.
 {¶ 32} The evidence presented through the testimony of the witnesses established that prior to the death of Valick's sibling, there were no reported concerns regarding the parenting of Elizabeth Rader and Steven Conley. In March of 2005, the trial court approved and adopted a case plan for the parents. Elizabeth had approximately thirteen months to participate and Steven had approximately nine months to participate.
 {¶ 33} The record established that Elizabeth made substantial progress in completing her case plan objectives. Specifically, she completed a mental health assessment and had been actively engaged in individual counseling, and had completed parenting classes. Finally, she attended all the available visitation with her child.
 {¶ 34} The guardian ad litem testified that Elizabeth had attended several visitation sessions and observed that Valick's relationship with his mother was very *Page 11 
typical. She stated that Elizabeth was attentive to the child's needs, that Valick would often crawl up into his mother's lap and that the two were affectionate toward each other. She also observed Elizabeth taking care of both Arabella and Valick and found the children and mother to be bonded. The guardian further testified that the father's visits with Valick were also normal. Finally, the guardian testified that she had no reason to believe that either the mother or father would fail to provide support, or be a negative influence on the child in the future.
 {¶ 35} The caseworker testified that he had observed the mother-child visits and did not find the visitation to be detrimental to the child. He also testified that there was no evidence that the child would suffer any emotional trauma if he were returned to the mother in the future.
 {¶ 36} Willa Rader testified that she and her family have had a relationship with Valick since the day he was born. She testified that when Valick was born, Elizabeth lived at their home and that the family helped care for the child while Elizabeth was recuperating from her cesarean section. Ms. Rader testified that she has educated herself on the problems encountered by children with incarcerated parents and has made efforts to maintain a healthy and safe relationship between Valick and his mother. She stated that Valick maintains a strong bond with his mother and that the relationship is a necessary part of his life. She testified that Elizabeth, prior to her incarceration, consistently exercised her visitation and continues to have "mommy visits" while she is incarcerated. She testified that Marysville has a visitation room that is appropriate for children and families and that she feels comfortable having Valick visit under these circumstances. She testified that during mommy visits or "mommy day", Valick gets *Page 12 
excited, gives his mom hugs and says he loves her. She testified that she is not opposed to letting the parents have a relationship with Valick if the court deems it to be appropriate.
 {¶ 37} The evidence also established that Willa and Bennett Rader are teachers by profession. Willa is an elementary school teacher and Bennett is a high school history teacher with library responsibilities which include the elementary grades. The maternal grandparents have two other young adult children who reside in the home. Heather is a nurse who is working and living at home and James is a college student. The Raders also maintain an ongoing relationship with their granddaughter Arabella, and make sure Valick has a relationship with his half sister who he calls "sissy". The evidence also established that Valick is strongly bonded to his grandparents and to Heather, James and Arabella. Both Heather and James help with caretaking. The guardian testified that Valick enjoys his home environment and feels protected and safe. The guardian testified that Valick's actions speak volumes about his desire to remain in the care and custody of his grandparents and to continue a healthy relationship with his mother. The guardian further stated that with the Raders, Valick is protected and loved and they can approach future concerns as a family.
 {¶ 38} Finally, all the witnesses agree that Valick should remain in the custody of the maternal grandparents. Although the caseworker testified that the Raders were the first adoption choice, the family and guardian expressed concerns that the Raders might not remain the agency's adoption choice if permanent custody were granted. Finally, there was no evidence presented that being adopted by the Raders would be more beneficial than being in their legal custody. *Page 13 
 {¶ 39} Upon review we find that the trial court considered the best interest factors set forth in R.C. 2151.414(D). The evidence established that the child is strongly bonded to his mother, his maternal grandparents, his half sister and his other maternal relatives, and that these family members significantly affect his daily life. The evidence also establishes that the child's comfort level and loving demeanor express a desire to remain in his maternal grandparents' custody and to maintain a relationship with his mother. Finally, the child's history establishes that he has been an important member of the Rader family since his birth. His only separation from his parents and grandparents has been for the five months that he was placed in foster care, during which the grandparents actively participated in visitation. Finally, the evidence supported the trial court's conclusion that a legally secure placement could be achieved for the child in the grandparent's custody without the grant of permanent custody and termination of the child's relationship with his parents.
 {¶ 40} For these reasons we find that the decision of the trial court to deny the agency's motion for permanent custody and grant legal custody to the maternal grandparents, Willa and Bennett Rader, was not against the manifest weight or sufficiency of the evidence.
 {¶ 41} Accordingly, we hereby affirm the decision of the Richland County Court of Common Pleas, Juvenile Division.
 By: Edwards, J. Hoffman, P.J. and *Page 14 
Delaney, J. concur
 JUDGMENT ENTRY
For the reasons stated in our accompanying Memorandum-Opinion on file, the judgment of the Richland County Court of Common Pleas, Juvenile Division, is affirmed. Costs assessed to appellant.
[1] David Hodge and Elizabeth Hodge were married on October 29, 2005. *Page 1