DECISION AND JOURNAL ENTRY
This cause was heard upon the record in the trial court. Each error assigned has been reviewed and the following disposition is made:
 {¶ 1} Appellant, D.S. ("Aunt"), appeals from the judgment of the Wayne County Court of Common Pleas, Juvenile Division, which granted legal custody of J.S. to appellee, C.P. ("Father"). This Court reverses.
 I. {¶ 2} On October 31, 2005, Wayne County Children Services Board ("CSB") filed a complaint, alleging J.S. to be a dependent and neglected child. CSB alleged that J.S., who was four-and-a-half months old at the time, and his four older half-siblings were consistently left alone for days at a time with no food *Page 2 
in the house.[1] The agency alleged that the home was dirty and that the mother, C.S., had on-going problems with drugs and alcohol. The complaint made no mention of any fathers or alleged fathers. On November 2, 2005, the juvenile court issued a summons for hearing on the complaint, indicating proof of service on "FATHER UNKNOWN — REGULAR MAIL."[2]
 {¶ 3} On December 2, 2005, the juvenile court adjudicated J.S. a dependent child and ordered that "temporary custody of [J.S.] is continued with [Aunt] with the Wayne County Children Services Board to have interim protective supervision." In its judgment entry, the juvenile court made no mention of any father or alleged father. The judgment entry further did not address the issue of service. There is nothing in the record before this Court to indicate that service was effected on any alleged father or John Doe.
 {¶ 4} On December 16, 2005, the juvenile court issued a judgment entry after disposition, continuing temporary custody with Aunt.
 {¶ 5} On May 10, 2006, Father filed a pro se request for custody of J.S. Father requested the appointment of counsel to represent him. He asserted that he did not know that J.R. was his child until he was asked to take a paternity test, *Page 3 
because Aunt was seeking an order of child support for the child. The genetic test report filed in this case bears a stamp noting receipt by the Holmes County CSEA on February 16, 2006, and indicates a 99.99% probability that Father is the father of J.S.
 {¶ 6} The file also contains Aunt's purported motion to be made a party in the five siblings' cases. The motion does not contain a time-stamp, and the certificate of service states only that Aunt "sent copies" of the motion to various parties, including the "respective fathers of each child" without specifying the date on which she did so. The juvenile court granted Aunt's motion on August 25, 2006, and appointed counsel to represent her. Aunt has asserted in her motion that she had submitted a financial affidavit in support of her request for counsel, but the record contains no such affidavit.
 {¶ 7} On September 1, 2006, Father filed a motion for an order of visitation, mirroring the overnight unsupervised visitation authorized by CSB. Earlier the same day, Aunt filed an emergency motion for relief, requesting that all visitation between Father and J.S. be supervised. In support, Aunt asserted that emergency relief was necessary in order to ensure the safety of the child. On September 8, 2006, CSB filed a motion to modify visitation to provide Father with unsupervised and extended visitation with J.S. On November 22, 2006, after hearing, the juvenile court ordered that Father have extended visitations with the *Page 4 
child, provided that he provide proof of a negative drug screen to CSB 48 hours prior to each visit.
 {¶ 8} On December 4, 2006, Aunt filed a motion for contempt and sanctions against Father, alleging that he failed to timely return the child after a visitation. On December 6, 2006, Aunt filed a motion for legal custody of J.S. On February 8, 2007, the juvenile court issued a judgment entry in which it found that contempt was not proven.
 {¶ 9} The matter proceeded to custody hearing on April 9, 2007. On May 3, 2007, the juvenile court issued a judgment entry, granting Father's motion for legal custody of J.S., effective May 12, 2007. Aunt filed a notice of appeal and a motion to stay the transfer of custody. The juvenile court denied the motion for stay, and Aunt petitioned this Court for an emergency stay. This Court granted the stay.
 {¶ 10} Aunt timely appeals from the juvenile court's final judgment, raising three assignments of error.
 II. ASSIGNMENT OF ERROR I "THE TRIAL COURT ERRED AS A MATTER OF LAW WHEN IT ORDERED CUSTODY OF THE MINOR CHILD, J.S., TO [FATHER]." *Page 5 
 {¶ 11} Aunt argues that the trial court erred as a matter of law by granting legal custody of the child to Father because the juvenile court misinterpreted and misapplied the law. This Court agrees.
 {¶ 12} An appellate court's review of a trial court's interpretation and application of the relevant law is de novo. See Akron v.Frazier (2001), 142 Ohio App.3d 718, 721.
 {¶ 13} This Court recently held:
 "Although the statutory scheme regarding an award of legal custody does not include a specific test or set of criteria, this Court has previously held that the trial court must base such a decision on the best interest of the child. In re S.J., 9th Dist. No. 23199, 2006-Ohio-6381, at ¶ 32, citing In re N.P., 9th Dist. No. 21707, 2004-Ohio-110, at ¶ 23. Consequently, `[i]n legal custody cases, trial courts should consider all factors relevant to the best interest of the child.' In re S.J. at ¶ 34. We have also noted that the factors contained in R.C. 2151.41.4(D) may provide guidance to the trial court in making an award of legal custody. Id. at ¶ 32. Those factors include: `[t]he interaction and interrelationship of the child with the child's parents, siblings, relatives, foster caregivers, and out-of-home providers, and any other person who may significantly affect the child; [t]he wishes of the child, as expressed directly by the child or through the child's guardian ad litem, with due regard for the maturity of the child; [t]he custodial history of the child, including whether the child has been in the temporary custody of one or more public children services agencies or private child placing agencies for twelve or more months of a consecutive twenty-two month period ending on or after March 18, 1999; [and] [t]he child's need for a legally secure permanent placement and whether that type of placement can be achieved without a grant of permanent custody to the agency[.]' R.C. 2151.41.4(D)(104)." In re R.R., 9th Dist. No. 23641, 2007-Ohio-4808, at ¶ 12.
 {¶ 14} In reliance on the Ohio Supreme Court's case In re C.R.,108 Ohio St.3d 369, 2006-Ohio-1191, the juvenile court stated that the test to be applied at *Page 6 
custody hearings where the child has been adjudicated dependent, neglected or abused is the best interest of the child. After reciting the evidence presented at the hearing, at times inaccurately, the juvenile court found the following:
 "It would be simple to argue that [J.S.] is certainly better off with his aunt . She has had custody since he was two months old. Living on a farm would be nicer that [sic] Father's house and certainly it is better for [J.S.] to live with his half-siblings. But, we no longer live in a perfect world when it comes to child custody. The mother herein choose [sic] to have five children with five different men, none of whom did she marry. At birth, custody of [J.S.] could have always been with his father and any one of his half-siblings could have been separated from this hybrid family unit should one of the other fathers asserted parental custody rights."
 {¶ 15} Again, purportedly in reliance on the Ohio Supreme Court's decision in In re C.R., the juvenile court reasoned that because Father, as the child's biological father, could file another motion for custody of the child at any time, it would not be in the best interest of J.S. to prolong reunification between father and son. The juvenile court asserted that upon the filing of Father's subsequent motion for custody, the juvenile court need only consider "what more Father has accomplished to make it more likely that he would be successful." This Court finds the juvenile court's interpretation and application of the law relevant to this dispute inaccurate.
 {¶ 16} First, the juvenile court erred as a matter of law when it asserted that Father could have had custody of J.S. at the child's birth. R.C. 3109.042 states, in relevant part that "[a]n unmarried female who gives birth to a child is the sole residential parent and legal custodian of the child until a court of competent *Page 7 
jurisdiction issues an order designating another person as the residential parent and legal custodian." Accordingly, Father could not have assumed the role of the child's legal custodian solely on the basis of the establishment of paternity. Rather, he had no parental custody rights to assert in the absence of an order of a court of competent jurisdiction.
 {¶ 17} The juvenile court next presumes that reunification between Father and the child is a foregone conclusion only because Father is the child's father. The Ohio Supreme Court held in In re C.R. at paragraph one of the syllabus that "[a]n award of legal custody of a child does not divest parents of their residual parental rights, privileges, and responsibilities." However, the high court did not hold that reunification between parent and child must necessarily eventually occur.
 {¶ 18} In In re James, 113 Ohio St.3d 420, 2007-Ohio-2335, the Supreme Court addressed the factors to consider when modifying an award of legal custody of a child previously adjudicated dependent, neglected or abused. In In re James, the child was adjudicated an abused and dependent child and was placed in the temporary custody of the Hamilton County Department of Human Services, with placement with the child's maternal grandparents. Id. at ¶ 5. The trial court subsequently awarded legal custody of the child to the maternal grandparents. Id. at ¶ 6. Three years later, the child's parents filed a motion for legal custody on the basis of the best interest of the child and arguing that the required showings in R.C. 3109.04(3)(1)(a) are unconstitutional. The juvenile court awarded custody to *Page 8 
the parents and the First District Court of Appeals affirmed, holding that "when a nonparent has nonpermanent custody of a child, the requirement in R.C. 3109.04(E)(1)(a) that the child's parent must demonstrate a change in circumstances for either the child or the nonparent in order for the court to modify custody is unconstitutional."In re James, 163 Ohio App.3d 442, 2005-Ohio-4847, at ¶ 19. The Supreme Court reversed, finding the standard for modification of custody in R.C.3109.04(E)(1)(a) constitutional, while recognizing the dissent's questioning of the applicability of that provision to the case. The majority then noted that R.C. 2151.42, applicable to modifications of dispositional orders within the context of dependent, neglect and abuse cases is even more compelling on the issue of permanency and the requisite findings that must be made prior to the modification of an order of legal custody.
 {¶ 19} The juvenile court in this case asserted that, if it granted legal custody to Aunt, then Father could file another motion for custody, i.e., a motion to modify custody, the next day. The juvenile court stated that it then need only consider what more Father had accomplished before awarding custody of the child to him. However, R.C.2151.42(B) states:
 "An order of disposition issued under division (A)(3) of section 2151.353, division (A)(3) of section 2151.415, or section 2151.417 of the Revised Code granting legal custody of a child to a person is intended to be permanent in nature. A court shall not modify or terminate an order granting legal custody of a child unless it finds, based on facts that have arisen since the order was issued or that were unknown to the court at that time, that a change has occurred in the circumstances of the child or the person who was granted legal *Page 9 
custody, and that modification or termination of the order is necessary to serve the best interest of the child."
 {¶ 20} Therefore, the juvenile court inaccurately stated the law when it stated that it need only look to what more Father had accomplished, i.e., Father's change of circumstances, before it could grant the presumed inevitable result of "reunification" with Father with whom the child had visited no more than 8 times in his life. The juvenile court then asserted that the only "possible issue to be accomplished would be more regular and/or extended visitation." The juvenile court implied that Father's lack of visitation due to his inability to provide regular drug screens was not Father's fault. The court then found that there was nothing to indicate further drug screens were necessary and that the six to eight prior visits Father had with the child had been uneventful. The juvenile court then seemingly concluded that, because Father would enjoy regular and extended visitation in the future without incident, prolonging "reunification" between Father and the child would not be in the child's best interest.
 {¶ 21} The juvenile court misinterpreted the applicable law by utilizing the test relevant to modifications of custodial dispositions and presupposing that reunification between Father and the child was inevitable. The juvenile court under these circumstances should have considered solely the best interest of the *Page 10 
child based on the evidence in ordering any custodial disposition.[3]
See In re R.R. at ¶ 12. It further misapplied its best interest of the child analysis by speculating as to Father's future circumstances and relying on that speculation in reaching its decision. Aunt's first assignment of error is sustained.
 ASSIGNMENT OF ERROR II THE TRIAL COURT'S ORDER AWARDING CUSTODY OF THE MINOR CHILD, J.S., TO [FATHER] WAS AGAINST THE MANIFEST WEIGHT OF THE EVIDENCE AND IN DIRECT OPPOSITION TO THE BEST INTERESTS OF THE MINOR CHILD."
 ASSIGNMENT OF ERROR III "THE TRIAL COURT'S ORDER AWARDING CUSTODY OF THE MINOR CHILD, J.S., TO [FATHER] WAS AN ABUSE OF ITS DISCRETIONARY POWERS."
 {¶ 22} Aunt argues that the juvenile court's order awarding legal custody of the child to Father was against the manifest weight of the evidence and an abuse of the trial court's discretion. Because our resolution of the first assignment of error *Page 11 
is dispositive of this appeal, this Court declines to address Aunt's remaining two assignments of error as they are rendered moot. See App.R. 12(A)(1)(c).
 III. {¶ 23} Aunt's first assignment of error is sustained. This Court declines to address the remaining two assignments of error. The judgment of the Wayne County Court of Common Pleas, Juvenile Division, is reversed and the cause is remanded for further proceedings consistent with this decision.
Judgment reversed, and cause remanded.
The Court finds that there were reasonable grounds for this appeal.
We order that a special mandate issue out of this Court, directing the Court of Common Pleas, County of Wayne, State of Ohio, to carry this judgment into execution. A certified copy of this journal entry shall constitute the mandate, pursuant to App.R. 27.
Immediately upon the filing hereof, this document shall constitute the journal entry of judgment, and it shall be file stamped by the Clerk of the Court of Appeals at which time the period for review shall begin to run. App.R. 22(E). The Clerk of the Court of Appeals is instructed to mail a notice of entry of this judgment to the parties and to make a notation of the mailing in the docket, pursuant to App.R. 30. *Page 12 
Costs taxed to appellee.
WHITMORE, P. J. MOORE, J. CONCUR.
[1] The four older half-siblings are not subjects of this appeal.
[2] This Court cannot fathom where the juvenile court clerk might have mailed the summons to the unknown father. Presumably, if the clerk knew the father's address so that the office could serve the summons by regular mail, the clerk had some idea of the father's identity.
[3] This Court holds that the best interest of the child test is appropriate in this case, only because the child was adjudicated a dependent child. In this case, however, although the child was adjudicated dependent, Father was not properly served as an individual or by service on John Doe. Accordingly, it is unclear whether we can imply Father's unsuitability as a result of the child's dependency adjudication. While Father notes that he was not properly served in regard to the adjudicatory hearing, he has neither moved the juvenile court to vacate the adjudication nor challenged the adjudication on appeal. Accordingly, this Court takes no position on whether the best interest test is appropriate when one parent is absent from the adjudicatory hearing because he was not properly served and notified of that hearing. *Page 1