OPINION *Page 2 
{¶ 1) Appellant, Michelle Fonner, appeals from the May 25, 2007, Judgment Entry of the Stark County Court of Common Pleas, Juvenile Division, granting legal custody of Marina and Nathaniel Fonner to their paternal grandparents, Merle and Eileen Fonner.
 STATEMENT OF FACTS AND CASE {¶ 2} This appeal concerns two minor children, Marina and Nathaniel Fonner. Appellant, Michelle Fonner is the natural mother of Guy Metz, Marina Fonner and Nathaniel Fonner. James Fonner, deceased, is the natural father of Marina and Nathaniel. Merle and Eileen Fonner are the paternal grandparents of Marina and Nathaniel. Todd Woods is Michelle Fonner's husband.
 {¶ 3} On January 18, 2006, the Stark County Department of Job and Family Services (hereinafter "SCDJFS"), filed a complaint alleging abuse, neglect and dependency of appellant's three children, Guy Metz, whose date of birth is April 9, 1991, Marina Fonner, whose date of birth is June 20, 1997, and Nathaniel Fonner, whose date of birth is May 25, 1999. The complaint stated that SCDJFS had been involved with the family since 1998. The allegations in the complaint included concerns of domestic violence perpetrated by Todd Woods against Guy Metz and appellant, and sexual abuse between the siblings. That same date the trial court issued an ex parte order of temporary custody of the children to SCDJFS.
 {¶ 4} On January 19, 2006, at an emergency shelter care hearing, the trial court granted temporary custody of the children to SCDJFS. The court further issued a no *Page 3 
contact order between Todd Woods and the children and appointed attorney Kenneth Crislip as the children's Guardian Ad Litem.
 {¶ 5} On February 15, 2006, the parties appeared for a pretrial, a case plan was filed and the matter was scheduled for trial on April 6, 2006. The case plan included services for both appellant and Todd Woods. Specifically, appellant was ordered to complete a parenting/psychological evaluation at Melymbrosia, any recommended treatment from that evaluation and a parenting program. Todd Woods was ordered to complete an anger management evaluation, a psychological evaluation, a drug and alcohol assessment at Quest and any recommended treatment.
 {¶ 6} On April 6, 2006, the agency moved the trial court to amend the complaint to delete the allegations of abuse and neglect. After the motion was approved, appellant stipulated to a finding of dependency as to all the children and the matter proceeded to disposition. At disposition, the trial court placed the children in the temporary custody of SCDJFS, continued the prior no contact order and granted the appellant supervised visitation with the children. A review hearing was scheduled for May 5, 2006, and the children's placement was scheduled for review on October 6, 2006.
 {¶ 7} On May 5, 2006, the trial court held a semi-annual review hearing wherein the trial court approved and adopted the current case plan and maintained the status quo of appellant and the children. The newly adopted case plan included continued long-term therapy for appellant due to the following concerns: she was likely to have difficulty fulfilling the responsibilities of life, she had significant emotional issues that would impact her ability to adequately parent and she continued to minimize the *Page 4 
violence to herself and her children by Mr. Woods. It was further recommended that appellant obtain and maintain full time employment.
 {¶ 8} The case plan also included a batterers' treatment program for Mr. Woods for no less than one year due to his extensive history of violent crimes, his adamant denial of culpability for his actions and his control of others by manipulation, intimidation or force. He was also considered to be in the moderate to high range for further violence against his family members. At the time of the hearing appellant had applied for and received a marriage license with Mr. Woods.
 {¶ 9} At the semi-annual review, the trial court also noted that, at the time of the hearing, appellant had a marriage license with Mr. Woods, that Marina and Nathaniel had been placed with their paternal grandparents and that appellant's visits with the children were "sporadic." Finally, the court ordered continued temporary placement of the children with SCDJFS, a continued no contact order between Mr. Woods and the children, and granted SCDJFS leave to file a motion for change of legal custody.
 {¶ 10} On May 10, 2006, appellant married Mr. Woods.
 {¶ 11} On June 20, 2006, SCDJFS filed a motion for change of legal custody. Specifically SCDJFS moved the court to grant legal custody of Marina and Nathaniel to their paternal grandparents. In the motion SCDJFS stated that the agency had serious concerns regarding domestic violence between Mr. Woods and appellant. The agency further stated that appellant had been warned by the magistrate at the semi-annual review hearing that a marriage to Mr. Woods would result in the agency pursuing a change of legal custody to the paternal grandparents. The matter was scheduled for trial on September 20, 2006. *Page 5 
 {¶ 12} On September 13, 2006, appellant filed a motion for a return of the children's custody and a termination of the agency's involvement. In the motion appellant argued that she had actively engaged in case plan services and that Robert Wycoff of Intercede recommended that reunification should begin.
 {¶ 13} On September 18, 2006, SCDJFS filed an amended case plan which included an additional objective for appellant and Mr. Woods for mental health medications. Specifically, appellant required medication for her bipolar disorder diagnosis.
 {¶ 14} On September 20, 2006, the trial court continued the trial date on the motion for change of legal custody and appellant's motion for return of custody to November 8, 2006. The trial court further ordered the parties to participate in mediation on October 24, 2006.
 {¶ 15} On October 6, 2006, the trial court held an annual review hearing. In the entry the trial court stated that the children's therapist had requested a modification of visitation. The trial court ordered the visitation to be reviewed on the scheduled trial date.
 {¶ 16} On October 24, 2006, the court indicated that the parties had resolved their concerns and reached "full agreement" in mediation. As a result SCDJFS moved to modify their motion for change of legal custody to a motion for an extension of temporary custody of the children. By agreement of the parties, the trial court extended SCDJFS's temporary custody of the children for an additional six months, until May 9, 2007. The trial date of November 8, 2006 was cancelled. A review hearing was *Page 6 
scheduled for March 29, 2007. A Mediation Outcome notice was filed on October 25, 2006.
 {¶ 17} On March 19, 2007, SCDJFS filed a second motion for change of legal custody of Marina and Nathaniel to the paternal grandparents. In the motion SCDJFS stated that appellant and Mr. Woods had made minimal progress with their case plan objectives. The agency further stated that Mr. Woods completed his drug and alcohol assessment but refused to participate in recommended treatment and continued to minimize his history of domestic violence. The matter was scheduled for further hearing on March 29, 2007.
 {¶ 18} On March 29, 2007, the pending motions were scheduled for trial and mother was granted an increase to three hours in visitation time.
 {¶ 19} On May 1, 2007, Eileen and Merle Fonner, by and through counsel, filed a motion for legal custody of Marina and Nathaniel.
 {¶ 20} On May 8, 2007, the Guardian Ad Litem's Report was filed.
 {¶ 21} On May 8 and May 18, the trial court heard evidence regarding the motion for change of legal custody and appellant's motion to terminate temporary custody. In support of its motion SCDJFS presented the testimony of several witnesses including, the children's caseworker Elizabeth Parsons, the childrens' counselor Amy Schuster and the Guardian Ad Litem.
 {¶ 22} Elizabeth Parsons testified that the children had been in placement with their paternal grandparents for more than a year, were bonded to the paternal grandparents and were doing well. T.103 and 107. She testified that the grandparent's home is clean and that the children each have their own bedrooms. She testified that *Page 7 
the children were gradually disclosing information about the abuse that occurred in the appellant's home prior to their removal. T.106. She testified that appellant was not making progress in individual counseling because appellant could not focus on issues concerning her mental health and stability. T.109. She further testified that appellant had exercised visitation but that recently visitation had become "somewhat inconsistent." T.110. She testified that, in April of 2007, appellant went to Florida for approximately two and a half weeks to visit her grandmother who was ill. She stated that during this time appellant missed a scheduled visit and refused to provide her with a contact number or current address. T.115. She testified that she explained to appellant the importance of the visitation in light of the upcoming hearings. She stated that appellant understood how important both situations were but that appellant stated she needed to be in Florida. T.115. She testified that the children's time with their grandparents was generally structured and that time with appellant was very chaotic. T.118. She testified that she had ongoing concerns regarding appellant's relationship with Mr. Woods and with Mr. Woods' reluctance to address his substance abuse problems and Mr. Woods' lengthy history of domestic violence. T. 119-120. She testified that she believed appellant presented an ongoing risk to the children. T.141. Specifically she stated:
 {¶ 23} "I believe that we have to look at Michelle's lengthy history of instability with her mental health as well as ongoing and repeated domestic violence of abuse situations, the children have been exposed to or experienced, as well as her decision making to put the children at risk repeatedly, including decisions to marry Mr. Woods *Page 8 
after being strongly cautioned by the Court, the Agency as well as providers against doing so due to the history and the implications it would have on her." T.141.
 {¶ 24} Finally, she testified that she believed that placement with the paternal grandparents was in the children's best interest. T.121
 {¶ 25} Amy Schuster testified that she was employed as a therapist at Northeast Ohio Behavioral Health. She testified that she had been working therapeutically with the Fonner children since February of 2006. T.146. She testified that Marina had been diagnosed with adjustment disorder unspecified and Nate had been diagnosed with adjustment disorder with disturbances of emotion and conduct. T.147. She testified that Nate had disclosed being physically abused by Mr. Woods which included being hit in the face and the body. Nate had also told of watching the appellant cry after she was hit by Mr. Woods.T.151. She testified that Nate was manifesting behavior problems because he was just beginning to discuss and process problems which occurred in the appellant's home. T.165. She testified that when Marina first came to counseling she had behavioral issues such as bed wetting, licking her lips until they were raw, excessive fingernail biting and an inability to relationship build.T.151-152. She testified that she and the grandparents had worked to reduce Marina's anxiety in an effort to control these behaviors and had made great progress. T. 152-153. She testified that the children were having difficulties adjusting after visitation with appellant.T.156. She testified that the children had an attachment to the appellant. She believed that contact with appellant was necessary but, that it must be consistent. T. 159-160. She testified that both children had expressed a desire to return home but that Marina had also expressed some concerns about reunification.T.172. Finally she testified that she *Page 9 
agreed that reintroducing the children into an environment in which they experienced physical and emotional abuse, at a time when they are just beginning to make disclosures and address these issues, would be detrimental to their mental health. T.175.
 {¶ 26} The guardian ad litem testified that he believed it would be in the childrens' best interest to be placed in the custody of Eileen and Merle Fonner. He testified that the children had behavioral problems that were challenging, that appellant had difficulty with the children, and that appellant needed to demonstrate an ability to manage her children on a full time basis. T.43. He testified that appellant's history of decision making, i.e. marrying Mr. Woods and disappearing to Florida, did not exhibit stability. T.44. He testified that appellant had not been able to maintain any stable employment and didn't have a stable living environment. T.37. He testified that the children were happy with their grandparents but that they also wanted to maintain a relationship with appellant. T.38. Finally, he testified that he believed the grandparents would follow any court orders regarding continued contact between the appellant and the children. T.48.
 {¶ 27} On May 18, 2007, Eileen and Merle Fonner filed a motion to intervene and be designated as parties in the dependency case. The motion was denied.
 {¶ 28} On May 24, 2007, after taking the matter under consideration, the trial court denied appellant's motion to terminate and granted the motion by DJFS for a change of legal custody thereby terminating the agency involvement and granting legal custody of Marina and Nathaniel to Eileen and Merle Fonner. The trial court's judgment was filed on May 25, 2007. *Page 10 
 {¶ 29} It is from this decision that appellant now seeks to appeal setting forth the following assignment of error:
 {¶ 30} "THE JUDGMENT OF THE TRIAL COURT THAT THE BEST INTEREST OF THE MINOR CHILDREN WOULD BE SERVED BY GRANTING A CHANGE OF LEGAL CUSTODY TO PATERNAL GRANDPARENTS IS AGAINST THE MANIFEST WEIGHT OF THE EVIDENCE."
 {¶ 31} This Court recognizes that the right to parent one's children is a fundamental right. Troxel v. Granville (2000), 530 U.S. 57, 66, 120 S.Ct. 2054; In re Hayes (1997), 79 Ohio St.3d 46, 48, 679 N.E.2d 680. "However, government has broad authority to intervene to protect children from abuse and neglect." In re C.F., 113 Ohio St.3d. 73, 78,2007-Ohio-1104, 862 N.E.2d 816; See also R.C. 2151.01.
 {¶ 32} R.C. 2151.353 governs the disposition of abused, neglected, or dependent children in a case where custody of a child in a dependency case is being granted to a non-parent. In re. C.R., 108 Ohio St.3d 369,2006-Ohio-1191, 843 N.E.2d 1188; See also, In re Bumette, In reWaiters/Coller Children, Stark App. No. 2001CA00194, 2001-Ohio-1967, See also, In re Allen, Delaware App. No. 03CAF08041, 2004-Ohio-2911; In reNawrocki, Stark App. No. 2004-CA-0028, 2004-Ohio-4208; In re D.R.,153 Ohio App.3d 156, 2003-Ohio-2852, 792 N.E.2d 203.
 {¶ 33} The Supreme Court of Ohio made it clear in In re C.R. that once a child has been adjudicated dependent it is no longer necessary to find the parent unsuitable, since this determination had already been made at the dependency hearing. In re C.R. supra, ("A juvenile court's adjudication of abuse, neglect, or dependency is a determination about the care and condition of a child and implicitly involves a *Page 11 
determination of the unsuitability of the child's custodial and/or noncustodial parents. R.C. § 2151.23(A)(2)" i.e. "When a juvenile court adjudicates a child to be abused, neglected, or dependent, it has no duty to make a separate finding at the dispositional hearing that a noncustodial parent is unsuitable before awarding legal custody to a nonparent.")
 {¶ 34} R.C. 2151.353(A) states in pertinent part that, "If a child is adjudicated an abused, neglected, or dependent child, the court may make any of the following orders of disposition:
 {¶ 35} `(1) Place the child in protective supervision;
 {¶ 36} `(2) Commit the child to the temporary custody of a public children services agency, a private child placing agency, either parent, a relative residing within or outside the state, or a probation officer for placement in a certified foster home or in any other home approved by the court;
 {¶ 37} `(3) Award legal custody of the child to either parent or to any other person who, prior to the dispositional hearing, files a motion requesting legal custody of the child;
 {¶ 38} `(4) Commit the child to the permanent custody of a public children services agency or private child placing agency* * *.
 {¶ 39} `(6) Order the removal from the child's home until further order of the court of the person who committed abuse as described in section 2151.031 of the Revised Code against the child, who caused or allowed the child to suffer neglect as described in section 2151.03 of the Revised Code, or who is the parent, guardian, or custodian of *Page 12 
a child who is adjudicated a dependent child and order any person not to have contact with the child or the child's siblings.'"
 {¶ 40} R.C. 2151.353(E)(2) allows any party, other than the parents whose parental rights have been terminated, to move for an order modifying or terminating any dispositional order, including an award of temporary or permanent custody. The statute provides:
 {¶ 41} "Any public children services agency, any private child placing agency, the department of job and family services, or any party, other than any parent whose parental rights with respect to the child have been terminated pursuant to an order issued under division (A)(4) of this section, by filing a motion with the court, may at any time request the court to modify or terminate any order of disposition issued pursuant to division (A) of this section or section 2151.414 [2151.41.4] or 2151.415 [2151.41.5] of the Revised Code. The court shall hold a hearing upon the motion as if the hearing were the original dispositional hearing and shall give all parties to the action and the guardian ad litem notice of the hearing pursuant to the Juvenile Rules. If applicable, the court shall comply with section 2151.42 of the Revised Code. (Emphasis added.)
 {¶ 42} "A juvenile court must consider the `best interests' of the child when it considers the statutorily permissible dispositional alternatives enumerated in R.C. 2151.353(A)." In the matter of: Jacob,Nicholas, Neil, and Clair Barcelo (June 26, 1998) Geauga App. No 97-G-2095, unreported, citing In re Cunningham (1979),59 Ohio St.2d 100, 107, 391 N.E.2d 1034. See also, In re Brown (2001),142 Ohio App.3d 193, 755 N.E.2d 365; In re Pryor (1993), 86 Ohio App.3d 327,620 N.E.2d 973. However, in legal custody cases such as this, which are incident to dependency, neglect and abuse *Page 13 
actions, the statutory scheme does not include a specific test or set of criteria that the trial court must use to determine the best interest of the child. In re Pryor (1993), 86 Ohio App.3d 327, 620 N.E.2d 973;In re S.J., Summit App. No. 23199, 2006-Ohio-6381. As a result trial courts should consider all factors relevant to the best interest of the child. In re S.J. supra. In this regard the factors set forth in R.C.2151.414 may be used by the trial court in determining whether a grant of legal custody is in the best interest of the children. In reT.A., Summit App. No. 22954, 2006-Ohio-4468; In re R.R., Summit App. No 23641, 2007-Ohio-4808, In re S.J., Wayne App. No. 07CA0035,2007-Ohio-6402, In re Conley, Richland App. No. 07-CA-69,2007-Ohio-6314. Other factors to consider may include those set forth in R.C. 3109.04(F)(1). In re Pryor, supra.
 {¶ 43} Pursuant to R.C. 2151.414(D), in determining the best interest of a child, the court may consider all relevant factors, including but not limited to the following:
 {¶ 44} "(1) the interaction and interrelationship of the child with the child's parents, siblings, relatives, foster care givers and out-of-home providers, and any other person who may significantly affect the child;
 {¶ 45} "(2) The wishes of the child, as expressed directly by the child or through the child's guardian ad litem, with due regard for the maturity of the child."
 {¶ 46} Pursuant to R.C. 3109.04(F)(1) additional best interest factors may, inter alia, include: the child's adjustment to his or her home, school or community, the mental and physical health of the persons involved in the situation, and the parties' willingness to facilitate companionship. See also, In re Pryor, supra.
 {¶ 47} In this case, the record establishes that appellant has made efforts to complete the components of her case plan. However, the witnesses agreed that *Page 14 
appellant had a history of poor decision making, (particularly in her decision to marry Mr. Woods) lack of employment and lack of stability in her home. They further expressed concerns that these factors presented an ongoing risk to the emotional and physical safety of the children. Furthermore, the therapist testified that the children are only beginning to disclose and process the physical and emotional abuse that occurred in appellant's custody and that placing them with the appellant would be detrimental their mental health.
 {¶ 48} The evidence also established that the children have been placed with their paternal grandparents for more than a year. During that time the children have successfully addressed ongoing behavior problems. It appears that, while the children have an attachment to their mother, they are strongly bonded to their paternal grandparents and are safe and happy in their care. Finally, the testimony established that although appellant and the grandparents have their differences, the grandparents will abide by court orders and/or therapeutic recommendations to maintain companionship between appellant and her children.
 {¶ 49} Based upon the record, we find the trial court did not abuse its discretion in determining that it is in the best interest of the children to grant legal custody to their paternal grandparents, Eileen and Merle Fonner, with visitation privileges to appellant.
 {¶ 50} Accordingly, appellant's assignment of error is hereby overruled. *Page 15 
 {¶ 51} The judgment of the Stark County Court of Common Pleas, Juvenile Division, is hereby affirmed.
 Edwards, J. Hoffman, P.J. and Wise, J. concur *Page 16 
 JUDGMENT ENTRY
For the reasons stated in our accompanying Memorandum-Opinion on file, the judgment of the Stark County Court of Common Pleas, Juvenile Division, is affirmed. Costs assessed to appellant. *Page 1