[Cite as *In re G.S.*, 2016-Ohio-7471.]

| STATE OF OHIO | ) | IN THE COURT OF APPEALS |
|---|---|---|
| | )ss: | NINTH JUDICIAL DISTRICT |
| COUNTY OF SUMMIT | ) | |

IN RE: G.S.

C.A. No.     28050

APPEAL FROM JUDGMENT
ENTERED IN THE
COURT OF COMMON PLEAS
COUNTY OF SUMMIT, OHIO
CASE No.     DN 12-10-675

DECISION AND JOURNAL ENTRY

Dated: October 26, 2016

CARR, Presiding Judge.

{¶1}     Appellant R.S. ("Mother") appeals the judgment of the Summit County Court of Common Pleas, Juvenile Division, that denied Mother's motion to modify legal custody. This Court affirms.

I.

{¶2}     Mother is the mother of three children, E.H., J.H., and the subject child of this case, G.S. In late 2012, Summit County Children Service Board ("CSB") removed the children and filed a complaint alleging that G.S. (then 10 months old) was a dependent child based on issues surrounding the safety and care of then-4-year old E.H., and then-3-year old J.H., as well as a lack of cleanliness and working utilities in the home. H.C. ("Father") is the father of G.S., and he shared a home with Mother and the three children at the time of the children's removal.[1]

---

[1] D.H. is the father of E.H. and J.H. Those children are now in the legal custody of D.H. and are not subjects of this appeal.

When Father's parents ("Paternal Grandparents," or, individually, "Paternal Grandfather" and "Paternal Grandmother") learned of the existence of G.S. and that he had been removed from Mother's and Father's home, Paternal Grandparents relocated to Northeast Ohio to accept placement of G.S. during the pendency of the action. Mother's mother and stepfather ("Maternal Grandparents," or, individually, "Maternal Grandmother" and "Maternal Grandfather") became involved in this matter after Paternal Grandparents had already obtained legal custody of the child.

{¶3}    At the adjudicatory hearing, Mother and Father waived their rights to a full hearing and instead agreed that G.S. be adjudicated a dependent child and placed in the emergency temporary custody of Paternal Grandparents. The parties further agreed that Mother and Father would have supervised visitation with the child as the parties may agree. At the subsequent dispositional hearing, Mother and Father again waived their rights to a full hearing; and the parties agreed that G.S. would be placed in the temporary custody of Paternal Grandparent subject to the protective supervision of CSB. Mother and Father were further granted a two-hour weekly visit with the child in Paternal Grandparents' home. CSB developed case plan objectives for the parties.

{¶4}    At three subsequent review hearings, the child was maintained in the temporary custody of Paternal Grandparents under protective supervision. The parents' visitation remained supervised. Mother and Father were each ordered to pay child support in the amount of $50.00 per month. CSB filed a motion for legal custody to third parties, specifically Paternal Grandparents.

{¶5}    At the final dispositional hearing, Father waived his right to a full hearing and agreed that G.S. be placed in the legal custody of Paternal Grandparents. Mother did not waive

her rights and the matter proceeded to a full hearing.  On November 26, 2013, the magistrate issued a decision ordering that the child be placed in the legal custody of Paternal Grandparents, that Mother and Father each pay child support in the amount of $50.00 per month, and that Mother and Father have supervised or monitored visitation as the parties may agree.  In the event the parties could not agree regarding days, times, and places of visitation, it was to occur every Sunday from 2:00-4:00 p.m. in a public place.

{¶6}   Furthermore, according to the decision, the parties were aware that Paternal Grandparents, who were federal employees, would be transferred to another state for employment purposes.  Therefore, the magistrate issued some contingency orders in the event of Paternal Grandparents' relocation.  In the event that the legal custodians intended to move out of Summit County, they were ordered to file a notice of intent to relocate.  If the parties could not agree that such relocation was in the best interest of the child, Paternal Grandparents were directed to file a motion to modify Mother's and Father's visitation, with a request for a hearing.  In the event of relocation out of state, Paternal Grandparents were ordered to make arrangements for Mother and Father to have monthly supervised visitation with the child.  The juvenile court issued its judgment reiterating the above orders the same day that the magistrate issued his decision. Mother did not file objections to the magistrate's decision.

{¶7}   In conjunction with the order granting legal custody, Paternal Grandparents both executed the statutorily required statement of understanding for legal custody which provided, inter alia, that they understood (1) that legal custody is intended to be permanent in nature and implicates a responsibility to the child until he reaches the age of majority, and (2) that Mother and Father retain residual parental rights, privileges, and responsibilities, including the privilege of reasonable visitation.

{¶8} On July 31, 2014, after being informed that the federal government was relocating them to Texas, Paternal Grandparents filed a Notice of Intent to Relocate, a motion to modify Mother's and Father's visitation, and a motion to modify Mother's and Father's monthly child support obligations to $0. Because these filings were not properly served on the other parties, Paternal Grandparents refiled their notice and motions on August 22, 2014. In response, Mother objected to the intent to relocate and moved to modify visitation. In addition, she filed a "complaint to determine custody," which was properly construed as a motion to modify custody. Maternal Grandmother also objected to the intent to relocate, and filed her own motion for legal custody, or in the alternative, legal custody to Mother. Maternal Grandparents jointly filed a motion for visitation. Finally, Mother and Maternal Grandmother filed joint motions for the legal custodians to return the child to Ohio and for an order of temporary legal custody to Maternal Grandparents during the pendency of the matter.

{¶9} The matter proceeded to a hearing before the magistrate. Father did not appear but the magistrate noted for the record that service was properly effected and that Father had submitted a response indicating his agreement and belief that the child's relocation to Texas with Paternal Grandparents was in the child's best interest. At the conclusion of the evidence and submission of the guardian ad litem's report, the magistrate orally denied Mother's and Maternal Grandmother's joint motion for temporary legal custody, instructed all parties to buy appropriate equipment to facilitate "internet" communication and visitation, ordered that Mother and Maternal Grandmother be allowed to visit with the child before Paternal Grandparents returned with him to Texas, and directed the parties to submit their closing arguments in writing.

{¶10} After closing arguments were briefed by the parties, the magistrate issued a decision ordering, in part, the following: (1) Mother's and Maternal Grandmother's objections to

Paternal Grandparents' notice of intent to relocate were overruled; (2) Mother's and Maternal Grandmother's motions for legal custody were denied; (3) G.S. was to remain in the legal custody of Paternal Grandparents; (4) Mother and Maternal Grandparents may travel to Texas and their own expense to visit with the child up to 5 times each year for up to 7 days at a time; (5) Mother's visitation was to be supervised by her sister, Maternal Grandmother, or another adult acceptable to Paternal Grandparents; (6) Father may visit with G.S. as the parties agree; (7) Mother, Father, and Maternal Grandparents may visit with the child at least once each week by telephone or audio-visual means via the internet; and (8) Mother's and Father's child support obligations were reduced to $0 per month to facilitate visitation travel. The juvenile court issued a judgment reiterating these orders the same day.

{¶11} Mother and Maternal Grandparents filed objections to the magistrate's decision, and Paternal Grandparents filed a brief in opposition to Mother's objections. The juvenile court overruled all the objections, ordered that G.S. would remain in the legal custody of Paternal Grandparents, and adhered to its remaining prior orders. Mother appealed and raises five assignments of error for review. This Court consolidates and rearranges some assignments of error to facilitate review.

## II.

### ASSIGNMENT OF ERROR I

THE COURT ABUSED ITS DISCRETION BY DENYING THE MOTHER'S PARENTAL RIGHTS BY FINDING THAT MOTHER'S CHILD SHOULD REMAIN IN THE CUSTODY OF THE CHILD'S PATERNAL GRANDPARENTS, AS THE DECISION DENIED [MOTHER'S] SUBSTANTIVE RIGHT OF DUE PROCESS, WHICH IS A BEDROCK RIGHT GROUNDED IN CUSTODY LAW.

{¶12} Mother argues that the trial court erred by violating her substantive right of due process when it retained the child in the legal custody of Paternal Grandparents. This Court disagrees.

{¶13} Constitutional substantive due process "'provides heightened protection against government interference with certain fundamental rights and liberty interests.'" *Troxel v. Granville*, 530 U.S. 57, 65 (2000), quoting *Washington v. Glucksberg*, 521 U.S. 702, 720 (1997). It is well established that a parent's interest in the care, custody, and control of his or her child "is perhaps the oldest of the fundamental liberty interests recognized * * *." *Troxel*, 530 U.S. at 65. The interest is not absolute, however, and may properly be limited under certain circumstances. *See In re Hockstok*, 98 Ohio St.3d 238, 2002-Ohio-7208, ¶ 17.

{¶14} Mother relies on *Hockstok* at ¶ 16 for the proposition that "the overriding principle in custody cases between a parent and nonparent is that natural parents have a fundamental liberty interest in the care, custody, and management of their children." She argues that her rights are, therefore, paramount and that the juvenile court erred by not deferring to her rights as the child's biological mother. Mother's reliance on *Hockstok* is misplaced in this case, however.

{¶15} The Supreme Court of Ohio distinguished the two types of child custody disputes as those arising, depending upon the circumstances, under either R.C. 3109.04 (addressing shared parenting and allocation of parental rights and responsibilities) or R.C. 2151.23 (addressing, inter alia, custody of children adjudicated dependent, neglected, or abused). *Id.* at ¶ 13. The circumstances in *Hockstok* arose out of a parentage action during which the maternal grandparents were granted temporary custody of the child for six months to allow the mother time to establish a stable environment for the child. The mother agreed to this temporary

disposition, as well as an additional six-month extension. When the mother subsequently moved to regain custody, the maternal grandparents filed a cross-motion for legal custody. The domestic relations court solely considered the best interests of the child and awarded legal custody to the maternal grandparents. The *Hockstok* court remanded the matter to the domestic relations court to render a parental unsuitability determination prior to initially depriving the mother of her fundamental parental rights and awarding legal custody to a nonparent. *Id.* at ¶ 40.

{¶16} The circumstances of the instant case are distinguishable. Here, the issue of the child's custody arose out of a dependency action, governed by R.C. 2151.23. "A juvenile court adjudication of abuse, neglect, or dependency is a determination about the care and condition of a child and implicitly involves a determination of the unsuitability of the child's custodial and/or noncustodial parents." *In re C.R.*, 108 Ohio St.3d 369, 2006-Ohio-1191, paragraph two of the syllabus. While a court may not award custody to a nonparent in the absence of a determination of parental unsuitability, where the parent has been adjudged unsuitable, "the state may infringe upon the fundamental parental liberty interest of child custody." *Hockstok* at ¶ 17. Moreover,

> A parent should be given only one unsuitability determination, which should come at the time of the legal custody hearing. After such a determination has established, *or taken away*, a parent's fundamental custodial rights, the focus must shift from the rights of the parents to the rights of the child. A child's rights are effectuated through the use of the best-interest-of-the-child standard for subsequent custodial modifications requests.

(Emphasis added.) *Id.* at ¶ 38.

{¶17} Although a parent has been adjudged unsuitable, such a determination "does not, however, permanently foreclose the right of either parent to regain custody, because it is not a termination of all residual parental rights, privileges, and responsibilities[.]" *In re C.R.* at ¶ 23. A parent may move to modify custody pursuant to the law set forth in R.C. 2151.42. *Id.* Even

so, reunification between parent and child is not an eventual foregone conclusion. *See In re J.S.*, 9th Dist. Wayne No. 07CA0035, 2007-Ohio-6402, ¶ 17.

{¶18} As Mother was earlier determined to be unsuitable based on the child's adjudication of dependency (in this case, by agreement of the parties), her fundamental parental rights were limited, albeit not terminated. The subsequent requests to modify custody were filed and disposed in accordance with law, specifically pursuant to R.C. 2151.42(B). Therefore, the matter was resolved "pursuant to procedures that [were] fundamentally fair" as Mother argued they must be. Accordingly, the juvenile court did not violate Mother's substantive due process rights when it retained the child in the legal custody of Paternal Grandparents. Mother's first assignment of error is overruled.

## ASSIGNMENT OF ERROR II

THE COURT ABUSED ITS DISCRETION BY RELYING ON AN OUTDATED PSYCHOLOGICAL EVALUATION, REFERRED TO BY THE GUARDIAN AD LITEM, WHEREAS A NEW REPORT HAD BEEN MADE BY A QUALIFIED PSYCHOLOGIST WHO TESTIFIED, WHICH STATED THERE WAS NO REASON WHY [MOTHER] COULD NOT PARENT – AND FURTHER ABUSED ITS DISCRETION BY NOT CONSIDERING THE NEW REPORT OVER THE OUTDATED REPORT. THE NEW REPORT WAS THE ONLY ONE THAT SHOULD HAVE BEEN CONSIDERED AS A VALID REPORT, AND THE DOCTOR TESTIFIED AS TO BOTH REPORTS AND STATED THAT THE OLD REPORT WAS OUTDATED, BASED ON TIME, AND SHOULD NOT HAVE BEEN CONSIDERED.

## ASSIGNMENT OF ERROR III

THE COURT ABUSED ITS DISCRETION BY RELYING ON AN IMPROPER EVALUATION MADE BY THE GUARDIAN AD LITEM. THE GUARDIAN AD LITEM DID NOT VISIT [MOTHER'S] DWELLING, AND DID NOT ADDRESS THE ALTERNATIVE OF UTILIZING THE RESIDENCE OF [MATERNAL GRANDMOTHER] IN OHIO, AND DID NOT VISIT THE RESIDENCE OF [ ] PATERNAL GRANDPARENTS IN TEXAS. AS A RESULT, THE GUARDIAN AD LITEM PRODUCED AN INCOMPLETE EVALUATION OF THE JUVENILE COURT TO CONSIDER.

**ASSIGNMENT OF ERROR V**

THE COURT ABUSED ITS DISCRETION NOT FULLY CONSIDERING THE FACTORS AND EVIDENCE THAT ARE IN THE BEST INTERESTS OF THE CHILD, AND THE BEST INTEREST OF THE CHILD STANDARD HAS NOT BEEN MET. WAS IT IN THE BEST INTERESTS OF THE CHILD TO MAKE IT DIFFICULT FOR THE CHILD TO KNOW HIS NATURAL MOTHER? [SIC]

{¶19} Mother argues in these three assignments of error that the juvenile court abused its discretion by denying her motion for legal custody and that, moreover, the decision to retain G.S. in the legal custody of Paternal Grandparents was against the manifest weight of the evidence. This Court disagrees.

{¶20} "The decision to grant or deny a motion for legal custody is within the juvenile court's sound discretion." *In re K.A.*, 9th Dist. Lorain No. 02CA008162, 2003-Ohio-2635, ¶ 8. An abuse of discretion is more than an error of judgment; it means that the trial court was unreasonable, arbitrary, or unconscionable in its ruling. *Blakemore v. Blakemore*, 5 Ohio St.3d 217, 219 (1983). When applying the abuse of discretion standard, this Court may not substitute its judgment for that of the trial court. *Pons v. Ohio State Med. Bd.*, 66 Ohio St.3d 619, 621 (1993).

{¶21} "When evaluating whether a judgment is against the manifest weight of the evidence in a juvenile court, the standard of review is the same as that in the criminal context." *In re K.A.* at ¶ 5. Accordingly,

> an appellate court must review the entire record, weigh the evidence and all reasonable inferences, consider the credibility of witnesses and determine whether, in resolving conflicts in the evidence, the trier of fact clearly lost its way and created such a manifest miscarriage of justice that the conviction must be reversed and a new trial ordered.

*State v. Otten*, 33 Ohio App.3d 339, 340 (9th Dist.1986).

{¶22} To the extent that Mother argues that the juvenile court erred by relying on an outdated psychological evaluation and an incomplete evaluation by the guardian ad litem, the record belies these contentions. First, the references by the guardian ad litem to Mother's initial psychological evaluation relevant to the initial award of legal custody to Paternal Grandparents merely set the historical context for Mother's current status. Second, while the guardian ad litem did not visit either Mother's or Paternal Grandparents' current homes, she did an online review of the homes to determine their adequacy. While it was impractical for the guardian to travel to Corpus Christi, Texas, to personally observe Paternal Grandparents' home, she was nevertheless able to determine from a Google Earth and online search that it was large enough to accommodate the child's needs, and that there was nothing to indicate that the home was not appropriate. The guardian was not able to personally visit Mother's home, because Mother did not return the guardian's calls in a timely manner prior to the hearing. The guardian was able to determine from an online search, however, that Mother was living in an efficiency apartment that would not be large enough to accommodate the child. Nevertheless, she believed that Mother had the financial resources to move to a larger, more appropriate home if she had to do so. Accordingly, based on a review of the record and the juvenile court's judgment, Mother's arguments that the guardian performed an incomplete evaluation and that the trial court relied on outdated or incomplete information in ruling on Mother's objections is not well taken. Under the particular circumstances here, where Mother did not facilitate a physical visit to her home, the trial court did not abuse its discretion in considering the guardian's assessment of Mother's home based on a mere online search.

{¶23} Modification or termination of an award of legal custody issued pursuant to R.C. 2151.353(A)(3), as was the case here, is governed by R.C. 2151.42(B), which states, in relevant part:

> An order of disposition issued under [R.C. 2151.353(A)(3)] granting legal custody of a child to a person is intended to be permanent in nature. A court shall not modify or terminate an order granting legal custody of a child unless it finds, based on facts that have arisen since the order was issued or that were unknown to the court at that time, that a change has occurred in the circumstances of the child or the person who was granted legal custody, and that modification or termination of the order is necessary to serve the best interest of the child.

{¶24} The juvenile court concluded that there had been the requisite change in circumstances of the child and/or Paternal Grandparents, and no party has appealed from this determination. Accordingly, the only issue for review is whether the juvenile court's finding that retaining G.S. in the legal custody of Paternal Grandparents and denying Mother's motion to modify custody was in the best interest of the child.

{¶25} The child had been in the temporary or legal custody of Paternal Grandparents for over 24 months at the time of the modification hearing, at which time he was almost three years old. By all accounts, the child was thriving. Although there was tension between Paternal Grandparents and Mother and the maternal relatives, Mother had regular visitation with the child one weekend each month for a total of eight hours over the course of Saturday and Sunday. Paternal Grandparents testified that Mother agreed to those terms, and there is nothing in the record to indicate that Mother filed a contempt motion alleging she was being deprived of visitation or that Mother ever moved to increase visitation or remove the requirement that it be supervised or monitored.

{¶26} The record indicates that all parties understood that Paternal Grandparents would have to relocate outside of Ohio based on their employment obligations. Given the option of

relocating to either Arizona or Texas, they chose Texas because it was closer to Ohio where Mother, Father, and others of the child's relatives lived. After relocating to Texas for Paternal Grandfather's employment, Paternal Grandmother was able to become a "virtual" employee, allowing the child to stay at home with her instead of spending his days in daycare.

{¶27} Approximately a month before the hearing, Mother met with a clinical counselor who interviewed her for a couple hours and administered the MMPI to perform a mental status evaluation. The counselor declined to utilize the current assessment mechanism required by the DSM5, and instead rendered an assessment based on Axes which are no longer used for a mental status evaluation. Based on his evaluation, he opined that Mother presented as well adjusted, with no signs of depression, anxiety, or maladaptive behaviors; although he believed Mother may have underreported.

{¶28} Mother's current counselor, with whom she had counseled for 10 months prior to the hearing, declined to testify. The counselor granted the guardian ad litem access to her clinical notes and submitted a letter, however. The clinical notes indicated that Mother self-reported depression and insomnia during her intake assessment and still continued to suffer from depression and difficulty sleeping. Mother's counselor refused to include her current diagnosis in her letter because she thought it might affect the case and outcome for Mother.

{¶29} The guardian ad litem recommended that G.S. remain in the legal custody of Paternal Grandparents because he had been in their home for 24 months and all of his needs were being met. In fact, she reported that Paternal Grandparents were providing "excellent care" for the child, while Mother was still dealing with many of the same issues underlying her prior case plan objectives. While acknowledging the difficult nature of the situation in which the child would live 1600 miles away from Mother, the guardian opined that it would not be in the child's

best interest to remove him from Paternal Grandparents' home. She further acknowledged that visitation would be a difficult issue, but she presented various options to facilitate Mother's right to visit with the child. In addition, the guardian supported Paternal Grandparents' motion to reduce Mother's child support obligation to $0 to mitigate travel expenses. Finally, the guardian ad litem testified that, all things being equal, had Maternal Grandmother originally been granted legal custody, she would have recommended that the child remain in that home, demonstrating her opinion that stability and consistency for the child was in his best interest. While she found Maternal Grandparents' home suitable, she could not recommend that the child be placed in their legal custody due to the lack of a well-established bond. The guardian could not recommend Mother as the legal custodian under the circumstances.

{¶30} Based on a review of the record, this Court cannot conclude that the trial court's retention of the child in the legal custody of Paternal Grandparents was against the manifest weight of the evidence. Accordingly, we cannot conclude that the juvenile court abused its discretion when it denied Mother's motion for legal custody. Mother's second, third, and fifth assignments of error are overruled.

## ASSIGNMENT OF ERROR IV

THE COURT ABUSED ITS DISCRETION NOT CONSIDERING THE HARDSHIPS IMPOSED UPON [MOTHER] WITH REGARD TO VISITATION, AND THE DISTANCE INVOLVED IN ACHIEVING VISITATION IN TEXAS AND FURTHER ABUSED ITS DISCRETION BY NOT CONSIDERING THE BEHAVIOR OF [ ] PATERNAL GRANDPARENTS WITH REGARD TO ALIENATING THE CHILD FROM [MOTHER], AS THEY DID NOT TIMELY REVEAL THEIR LOCATION IN TEXAS AND PRIOR TO GOING TO TEXAS CAUSED HARDSHIP AS TO VISITATION.

{¶31} Mother argues that the juvenile court abused its discretion in issuing the particular visitation order in this case, particularly in light of the Paternal Grandparents' past behavior regarding visitation. This Court disagrees.

**{¶32}** This Court reviews a juvenile court's decision regarding the modification of parental visitation for an abuse of discretion. *In re Hinkle Children*, 12th Dist. Butler No. CA2002-12-309, 2003-Ohio-5282, ¶ 9, citing *Braatz v. Braatz*, 85 Ohio St.3d 40 (1999), paragraph one of the syllabus; *see also In re DeCara*, 11th Dist. Portage No. 2001-P-0088, 2002-Ohio-6584, ¶ 7, citing *Miller v. Miller*, 37 Ohio St.3d 71, 74 (1988).

**{¶33}** Mother argues that the juvenile court abused its discretion by not considering Paternal Grandparents' past behavior when it issued the current visitation order. In addition, Mother argues that the juvenile court abused its discretion by failing to place the child in the temporary custody of Maternal Grandmother to facilitate Mother's visitation. To the extent that Mother again challenges the court's retention of child in Paternal Grandparents' legal custody, this Court has resolved that issue above.

**{¶34}** As to Paternal Grandparents' past behavior, this Court shares the guardian ad litem's concerns regarding Paternal Grandfather's rigidity regarding certain aspects of the prior visitation order and lack of compliance with other aspects. For example, Paternal Grandfather refused to allow any maternal relatives to accompany Mother during visits with the child because the order did not expressly grant them visitation. Moreover, Paternal Grandfather terminated one of Mother's visits because she did not ask his permission to take photographs of the child, despite there being no order proscribing such conduct. Nevertheless, Mother's remedy was to file a motion for contempt if she believed that the legal custodians were not complying with the court's orders. However, she neither moved for contempt nor for modification of visitation to address her concerns. In any event, the trial court could, and in this case did, consider Paternal Grandfather's behavior in regard to the issue of visitation.

{¶35} The juvenile court ordered supervised visitation for Mother, as well as visitation for Maternal Grandparents. Mother is entitled to visit in person with the child for a minimum of 35 days each year, a substantial increase from her previous allowed visitation of eight hours each month. In addition, Paternal Grandparents must allow Mother and Maternal Grandparents to have telephone or audio-visual internet contact (e.g. Skype or FaceTime) with the child at least once per week. Finally, whenever Paternal Grandparents travel with the child within 500 miles of Akron, Ohio, they must inform Mother and Maternal Grandparents and allow them visitation with the child. Mother's child support obligation was reduced to $0 to help offset the costs of travel to visit with the child. The juvenile court greatly expanded Mother's opportunities to visit with the child under the current order. Moreover, Paternal Grandparents and the guardian ad litem recognized that Mother's visitation could be expanded as the child ages.

{¶36} The juvenile court addressed the concern that Paternal Grandparents at times had made Mother's visitation with the child more complicated and cumbersome than appropriate by issuing specific orders and imposing obligations on Paternal Grandparents in order to provide safeguards and ensure Mother's ability to have regular contact with the child. All parties and the trial court recognized the hardships associated with facilitating visitation with a child so far away. Nevertheless, the juvenile court attempted to ameliorate the visitation hardships by reducing Mother's child support obligation to $0 to help offset her travel costs, by providing for much greater telephone and audio-visual communications with the child, and by facilitating greater visitation options for Mother's family. In addition, the juvenile court directed any party that wished to enforce any order to file a motion, requesting a hearing.

{¶37} Given the safeguards implemented by the juvenile court, coupled with the expansion of Mother's opportunity to visit with the child, this Court cannot say that the juvenile

court abused its discretion with regard to visitation. Mother's fourth assignment of error is overruled.

### III.

**{¶38}** Mother's assignments of error are overruled. The judgment of the Summit County Court of Common Pleas, Juvenile Division, is affirmed.

Judgment affirmed.

––––––

There were reasonable grounds for this appeal.

We order that a special mandate issue out of this Court, directing the Court of Common Pleas, County of Summit, State of Ohio, to carry this judgment into execution. A certified copy of this journal entry shall constitute the mandate, pursuant to App.R. 27.

Immediately upon the filing hereof, this document shall constitute the journal entry of judgment, and it shall be file stamped by the Clerk of the Court of Appeals at which time the period for review shall begin to run. App.R. 22(C). The Clerk of the Court of Appeals is instructed to mail a notice of entry of this judgment to the parties and to make a notation of the mailing in the docket, pursuant to App.R. 30.

Costs taxed to Appellant.

DONNA J. CARR
FOR THE COURT

MOORE, J.
HENSAL, J.
CONCUR.


APPEARANCES:

MARY JO HANSON, Attorney at Law, for Appellant.

ALEXANDRA HULL, Attorney at Law, for Appellee.

KANI H. HIGHTOWER, Attorney at Law, for Appellee.

LEE ANN SCHAFFER, Guardian ad Litem.